## WERNER *v.* RAWSON.

1. While a court of equity will not reform a written contract upon the ground of mistake unless the mistake is shown to be common to both parties, yet it may exercise its powers to grant relief, in a proper case, by rescinding and cancelling the writing upon the ground of a mistake of facts material to the contract by one party only.

2. Where it appeared that a mutual mistake existed between the contracting parties as to the price to be paid for certain real estate, the vendor understanding his offer of $5,000 to have been accepted, while the agent of the vendee understood the vendor's offer to be $2,500, and the vendor, ignorantly and without examination, accepted a check for the latter amount, and, without noting the consideration named therein, executed a deed which perported to convey the premises in consideration of $2,500, the question whether or not the vendor exercised reasonable diligence to discover the mistake was properly left to the jury for determination. The evidence introduced by the vendor explanatory of his failure to observe that the amount stated in the deed and check was not that at which he had agreed to sell, taken in connection with the fact that he conclusively proved his mistake to have been honest and genuine, and that immediately upon discovery of the same he notified the opposite party and sought to rescind the contract, warranted the jury in finding this issue in his favor.
May 16, 1892.  By two Justices.

Equity. Contract. Mistake. Vendor and purchaser. Before E. N. BROYLES, judge pro hac vice. Fulton superior court. September term, 1891.

Action by Mrs. Werner against Rawson, to recover possession of certain real estate, and for the restoration of a deed (by the establishment of a copy or by requiring the execution of one similar) which Rawson had executed and which conveyed to her the property in question. The defendant pleaded that the deed was executed as the result of a mistake or misunderstanding between himself and the plaintiff's brother, Simon, who negotiated with him in the purchase and sale of the property; and hence he prayed that the deed be rescinded and set aside. By amendment he alleged that Simon by design had the deed so prepared as to convey the property in question, embracing two houses and lots, for the consideration named by defendant in the negotiation as the price of one of them, so as to entrap him into signing the same. The jury found for the defendant, and that the contract be rescinded. To the overruling of her motion for a new trial the plaintiff excepted.

The evidence for the plaintiff may be thus stated: Simon for her negotiated with the defendant for the purchase of the property in question, lying in the city of Atlanta. The defendant stated that he had a lot fronting 100 feet on Formwalt street which was 125 feet deep, with two houses on it renting for $15 or $16 apiece per month, and that he would sell that piece of property for $2,500. In about a week Simon told him that the plaintiff would take that piece of property for $2,500, and he turned over to Simon the deed conveying the property to himself, that the title might be examined. As soon as the plaintiff's attorneys reported on the title, she caused them to prepare a deed describing the property with the above given dimensions, and reciting the consideration of $2,500. The defendant went to the office of Simon, who had this deed and a check for $2,500 drawn by the plaintiff on the Atlanta National Bank in the defendant's favor, and was by Simon shown the deed, examined it and said it was all right and he would go to a notary public and have it attested. They started out, and when they reached the front door Simon handed him the check saying, "Here is the money." The defendant looked at it and put it into his hat, and the two went on to the Merchants Bank where the deed was executed, attested by Simon and the notary public, and given to Simon who carried it to his office, the defendant saying he would go and tell the real estate man to turn over the rents to the plaintiff. In about fifteen minutes the defendant returned to Simon's office and asked Simon to show him the deed. Simon handed it to him, and with that he threw the check (which he had indorsed) upon the counter, said something about a mistake having been made, and carried off and destroyed the deed, Simon protesting that it belonged to the plaintiff, and the defendant refusing to give it back. The check was never

accepted back by the plaintiff, and the amount for which it was drawn was on deposit to her credit at the bank. The defendant did not tell Simon he had two lots on Formwalt street.

Evidence for defendant: When Simon called on him to inquire as to prices of property he would sell, he told Simon he had two lots on Formwalt street and would sell him either of them for $2,500. Simon returned in a day or two and said they would take them both, to which the defendant assented, meaning that both could be taken at $2,500 each. He never mentioned the two lots as one piece of property, but as two separate lots. They were separated by a fence, the house on one being numbered 26, and that on the other 28. He priced them at $2,500 apiece. The value of both was $6,000. The houses (of five rooms each) were built by the defendant at a cost of $2,300 or more, and he was getting $16 apiece per month for their rent. He bought the property when it was vacant. When he called at Simon's office to close the trade, Simon handed him the deed saying, " We have exactly followed the old deed." Defendant read the description and saw that this was so, but did not notice the amount recited as the consideration. When Simon handed him the check they were in the street. Defendant did not read it, being unable to do so without his glasses, and having an umbrella in one hand and something else in the other. He put the check into his hat, and did not take it out nor look at it until after he had parted from Simon and gone to the Atlanta National Bank, and had there written his name on the back of it. He then opened it to get the money, discovered the amount of it, and immediately returned to Simon's office in his store and told him he had made a mistake and given a check for only one lot. " I thought I bought them both," said Simon. " You did agree to buy them both," replied

the defendant, " but you only gave me a check for one lot. Give me the deed." Simon handed him the deed, and he handed Simon the check. Simon said, " It was my sister's money." The defendant replied that he did not know about that, and walked out with the deed. On the cross-examination of the defendant he testified thus : " When I came back to the store, I don't know what was the first question I asked Simon. I told him there was a mistake and I wanted to see the deed, that he had made a mistake. I could not say which way it came in, I am sure. I did not throw down the check, I just handed it to him ; he said it was his sister's deed. I told him a mistake had been made and I could not give it up to him. He did not ask me to give it up to him. I had it ; he said it was his sister's deed."

The grounds for new trial, beside those alleging that the verdict is contrary to law and evidence, are as follows :

The court charged :   " If Mr. Rawson believed that he was selling both these lots for $5,000, and Mr. Simon, representing Mrs. Werner, believed that he was selling the two lots for only $2,500, and if Mr. Rawson acted in good faith, and with proper diligence to ascertain the exact truth of the matter before he signed the deed, or these papers, and no negligence could be imputed to him for signing these papers not knowing the contents of them, then he would be entitled to relief in this case and the trade would not be binding upon him." The errors assigned are, that there was no evidence on which to found such a charge; and that the charge required a verdict for the defendant on his own mistake, provided only he believed he was selling for a certain sum and acted in good faith and with proper diligence to discover the truth of the matter before he signed the deed, while the law required mutuality in the mistake.

Error in refusing to charge as requested: "If you believe from the evidence that Mr. Rawson was mistaken as to the consideration named in the deed and check, and that Mr. Simon was not mistaken but in good faith believed that he was buying the property for his sister for $2,500, and believed that Mr. Rawson so thought at the time, and did not take any advantage of Mr. Rawson or practice any fraud on him that induced his mistake about the contents of the papers, then Mr. Rawson's mistake would not be sufficient to relieve him, and he could not be relieved. The mistake must have been mutual to entitle him to relief."

CANDLER & THOMSON, for plaintiff.

: HALL & HAMMOND, for defendant.

BLECKLEY, Chief Justice.

The action was brought by Mrs. Werner to recover the land and to establish a copy of the deed of conveyance which Rawson, the defendant, had executed to her and afterwards destroyed. The controlling legal question arises upon the equitable relief prayed for by Rawson in his answer, to wit: that the deed of conveyance be cancelled and set aside on the ground of mistake. The mistake, if any, was not alone in the deed, but in the contract itself, and consisted primarily of a difference of opinion or understanding as to the price at which the property was to be sold and conveyed by the defendant, Rawson, to the plaintiff, Mrs. Werner, the vendor understanding the price to be $5,000.00, and the purchaser (who contracted by her agent, Mr. Simon) understanding it to be $2,500.00. Both the consideration expressed in the deed and the amount of the check delivered in payment of the purchase money conformed to the understanding of the purchaser, so that relatively to these documents, the mistake was not mutual, but only unilateral. Relatively to the contract itself, the mistake was mutual in so far as mutuality

consists of mutual misapprehension ; for the vendor had one understanding of the price supposed to be agreed upon, and the purchaser another. But the case may be dealt with as one of mistake on the part of the vendor alone, which mistake, looking to the whole scope of it, consisted, first, in an honest belief that he had named $5,000.00 as the price of the property, and that the purchaser had agreed to pay it; secondly, in a like belief that such was the amount for which the check he received in payment was drawn, when in fact that amount was only $2,500.00.

1. There is a plain distinction between reforming a writing and cancelling it. Unquestionably it is true that to enable a court to *reform* an agreement evidenced by writing on the ground of mistake, it must affirmatively appear that the mistake was common to both parties, and that the writing as executed expresses the contract as understood by neither. The reason for the rule is forcibly stated by Ames, C. J., in Diman *v.* Railroad Co., 5 R. I. 134, who says : " A court of equity has no power to alter or reform an agreement made between parties, since this would be in truth a power to contract for them ; but merely to correct the writing executed as evidence of the agreement, so as to make it express what the parties actually agreed to. It follows, that the mistake which it may correct in such a writing must be, as it is usually expressed, the mistake of *both* parties to it; that is, such a mistake in the draughting of the writing as makes it convey the intent or meaning of neither party to the contract. If the court were to reform the writing to make it accord with the intent of one party only to the agreement, who averred and proved that he signed it as it was written by mistake, when it exactly expressed the agreement as understood by the other party, the writing, when so altered, would be just as far from expressing the agree-

v 89-40

ment of the parties as it was before; and the court would have been engaged in the singular office, for a court of equity, of doing right to one party at the expense of a precisely equal wrong to the other."

" Equity will not *reform* a written contract unless the mistake is proved to be the mistake of both parties, but may *rescind* and *cancel* a contract upon the ground of a mistake of facts material to the contract of one party only." 15 Am. & Eng. Enc. of Law, 647. The mistake " must be mutual if the complainant wishes to have the instrument *reformed* and not simply set aside, because equity cannot undertake to *reform* on the ground of the ignorance or misapprehension of *one* of the parties as to any facts, though it may rescind." Bispham's Prin. of Eq. (4th ed.) §191. So, " Cancellation is appropriate when there is an apparently valid written agreement or transaction embodied in writing, while in fact, by reason of a mistake of both or one of the parties, either no agreement at all has really been made, since the minds of both parties have failed to meet upon the same matters, or else the agreement or transaction is different, with respect to its subject-matter or terms, from that which was intended." 2 Pom. Eq. Jur. (2d ed.) §870. " A mistake on one side may be a ground for rescinding a contract, or for refusing to enforce its specific performance; but it cannot be a ground for altering its terms." Adams Eq. *171. And see Douglas *v.* Grant, 12 Ill. App. 273; Dulany *v.* Rogers, 50 Md. 524; Diman *v.* Railroad Co., *supra.* Our code, §3124, expressly declares : " A distinction exists between reforming a contract and executing a contract in case of mistake. To authorize the former, the court must be satisfied by the evidence that the mistake was mutual; but the court may refuse to act in the latter case, if the mistake is confined to the party refusing to execute." The next section provides that, "In all cases of a mis-

take of fact material to the contract, or other matter affected by it, if the party complaining applies within a reasonable time, equity will relieve." Another section (2636) declares: " Mistake of a material fact may, in some cases, justify a rescission of the contract." For some of the circumstances under which the courts have thought the complaining party entitled to relief, refer to Brown v. Lamphear, 35 Vt. 252, where it appeared that plaintiff unintentionally omitted from a deed conveying land to defendant a reservation of the right to use water from a certain spring; Paget v. Marshall, L. R. 28 Ch. Div. 255, where plaintiff, in executing a lease of certain buildings, included therein by mistake a warehouse he had intended to reserve for his own use, which he had refused to rent, but which defendant claimed to be included in the offer he had accepted; Harris v. Pepperell, L. R. 5 Eq. 1, where the plaintiff included in a deed to defendant a piece of land not intended to be so conveyed; also, the similar case of Baxendale v. Seale, 19 Beav. 601. In Webster v. Cecil, 30 Beav. 62, it appeared that defendant, by letter, offered to sell certain property to plaintiff for 1250l, and the plaintiff, by letter, accepted the offer. The defendant had, by mistake, inserted in his letter 1250l instead of 2250l, and he immediately gave notice of the error. The court refused to enforce the contract. See, also, Burkhalter v. Jones, 32 Kan. 5.

In view of the authorities above cited, we do not think the contention of the plaintiff in error can be maintained, and it follows, necessarily, that there was no error in declining to instruct the jury as requested. The charge complained of we think fairly and clearly presented the law governing the case, and properly stated the issues of fact to be determined by the jury in accordance therewith.

2. It is insisted that the conclusion at which the jury arrived was not warranted by the evidence; that de-

fendant had an equal opportunity with plaintiff's agent for knowing the truth, and if he was mistaken, he was grossly negligent in failing to inform himself, and should take the consequences of his neglect. So far as the evidence discloses, the only neglect or want of diligence with which the defendant is chargeable was his failure to note the consideration recited in the deed before signing the same, and his omission to examine the check handed him in payment to ascertain whether or not it was drawn for the amount at which he had agreed to sell his property. He explains his failure to discover the consideration expressed in the deed by stating that it was not drawn by himself, but by plaintiff's attorney; that upon handing him the deed, plaintiff's agent remarked, "We have exactly followed the old deed," by which he meant to allude to the description only, and defendant directed his attention solely to that portion of the deed to see that the property had been correctly described. It nowhere appears that defendant had the slightest reason to anticipate that the plaintiff's agent had misunderstood his offer, and believing, as he says he did, that plaintiff had agreed to a consideration of $5,000.00, and that this matter had been definitely and satisfactorily settled, there was nothing to specially call his attention to the fact that the consideration recited in the deed was only $2,500.00. As to the check, he says it was handed him by plaintiff's agent, half doubled up, after they had reached the street on their way to a notary's to have the deed attested; that his hands were full; he had an umbrella in one hand, and something in the other; that he is a man over 70 years of age, and could not read without his glasses, so simply placed the check in his hat and continued down the street, without looking to see for what amount the check was drawn. This is the sum and substance of defendant's negligence or lack of diligence.

In discussing the subject of what negligence will preclude relief in case of mistake, Pomeroy says: It has sometimes been said in very general terms that a mistake resulting from the complaining party's own negligence, will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say, that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby." Pomeroy's Eq. Jur. §856. Citing this eminent author, the Supreme Court of Minnesota laid down the following rule in Thwing v. Hall & Ducey Lumber Co., 41 N. W. Rep. 815: "Affirmative or defensive relief, such as the circumstances of the case may require, may be granted from the consequences of a mistake of any fact which is a material element in the transaction, and which is not the result of the mistaken party's own violation of some positive legal duty, if there be no adequate remedy at law." Means of comparing the conduct of the defendant in the present case with what has been held to be sufficient diligence will be afforded by reference to authorities cited *supra*. We are certainly not prepared to assert, as matter of law, that the negligence attributable to Mr. Rawson in the present case was such as to disen-

title him to relief. The question of his want of diligence was fairly presented to the jury for determination, and we are satisfied to abide by their conclusion.

An examination of the evidence leaves no doubt that Mr. Rawson as sincerely believed he was selling for a consideration of $5,000.00 as did Mr. Simon that he was buying the property at $2,500.00. There was a mutual mistake as to the terms of sale continuing throughout the entire negotiations, and upon this all important element of the contract the minds of the parties never agreed. The difficulty seems to have been that neither expressed with sufficient clearness the price to which he was willing to agree, and the mistake which arose as to this matter is as much attributable to Mr. Simon as to the defendant. To question the genuineness of the mistake which defendant sets up in his answer certainly seems unwarranted. His testimony as to the same bears the stamp of truth, and is supported, not alone by strong probability, but by every material circumstance which marks the transaction. As to the amount at which he priced the property to plaintiff's agent, he is supported by the testimony of his son, who swears he was present during the first conversation between the parties, and says, " Father said his price was $2,500.00 *apiece* for the lots." It seems that the son, as well as the father, was in error as to the price Mr. Simon agreed to pay, for he testifies further : "After Mr. Simon had looked at the lots, he proposed to take the two at $2,500.00 apiece, if they could be had at the same price each. I heard the second conversation. Mr. Simon said he and his sister had looked at the property ; they were well satisfied with the property ; they would take the two lots at $2,500.00 apiece. I was listening and heard distinctly. I was considerably interested in it, because I thought he sold them too cheap." It was shown the property consisted of two improved city lots,

separate and distinct, and though adjoining, divided by a partition fence, within ten minutes walk from the heart of the city. Five-room cottages had been erected on both lots, at a cost for the two, defendant testifies, of $2,200.00, which amount did not include the cost of fences or other necessary improvements. In addition to what defendant himself testified in regard to the value he placed upon the property, a witness was introduced in his behalf who testified that in 1888 he was in the real estate business, and "was familiar with the value of property over on Formwalt street, in that part of the city, at that time," and that "$3,000.00 a lot for the two lots would have been very cheap in 1888, three years ago." The only way in which this testimony was met by the plaintiff was by showing the property to have been returned for taxes in 1888 at $3,000, the same valuation at which it was assessed for taxation by the city. It is true Mr. Simon says he thought the price he agreed to pay, $2,500.00, was a fair price for the property, but he also distinctly says, "At that time, I was not very well posted about property. We were looking more to the income," by which latter remark he referred to the price for which the property could be rented. But a circumstance even more strongly in favor of defendant is the fact that immediately upon his discovery of the amount stated in the check he had received in payment, he at once, and without the slightest delay, repudiated the whole transaction. His testimony is uncontradicted that after signing the deed, he crossed the street to the bank at which the check was made payable, and it was not until after he had indorsed the check that he discovered the amount expressed therein to be but $2,500.00. Without delay he returned to Mr. Simon's office and gave notice of the mistake which had been made. As to what there transpired, it may be best to quote Mr. Simon's own statement : "I went back to my store, in-

tending that evening to have the deed recorded. About fifteen minutes after that—about that time—Mr. Rawson came back and asked me to show him the deed. I handed him the deed, and with that he threw the check on the counter and said something about a mistake having been made, and went out of the store with the deed." No further steps looking to a sale or purchase of the property were taken by either party, and each was left in the position he occupied prior to the commencement of negotiations. It will be seen, therefore, that a rescission of the contract and a cancellation of the deed will do injustice to neither of the parties, nor will it deprive the plaintiff of any right to which in equity and good conscience she may be entitled.

We are entirely satisfied with the verdict of the jury, and there was no error in refusing to grant a new trial.

*Judgment affirmed.*