[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14636
_____

D.C. Docket No. 1:11-cv-00339-CC

VICTOR W. PATTERSON,

Plaintiff-Appellant,

TOBY G. BREEDLOVE,

Plaintiff-
Counter Defendant-
Counter Claimant-
Appellant,

JEANNINE B. RULIS,
f.k.a. Charlotte Jeannine Breedlove,

Plaintiff-
Counter Defendant-
Counter Claimant,

versus

CITIMORTGAGE, INC.,

Defendant-
Counter Claimant-
Appellee,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 28, 2016)

Before ED CARNES, Chief Judge, JILL PRYOR, Circuit Judge, and REEVES,[*] District Judge.

ED CARNES, Chief Judge:

Victor Patterson and Toby Breedlove appeal from the district court's grant of summary judgment to CitiMortgage, Inc. and Mortgage Electronic Registration Systems, Inc. ("Mortgage Systems"). They seek to enforce a contract between Patterson and CitiMortgage for the sale of Breedlove's home to Patterson for a bargain basement price. CitiMortgage contends the sale price stated in its offer letter to Patterson was an obvious clerical error and that the contract should be rescinded for that reason. We agree.

_____

[*] Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**I.**

In 2007 Breedlove obtained a $550,000 loan from CitiMortgage to finance the purchase of a house in Gwinnet County, Georgia.  By 2008 he had fallen behind on his payments and the loan went into default.  Hoping to avoid foreclosure, Breedlove sought to sell his home to Patterson through a short sale and Patterson communicated directly with CitiMortgage to negotiate the sale.  During those conversations, CitiMortgage emphasized that it would not agree to a deal unless the short sale would generate a net payout that was greater than the expected proceeds from a foreclosure sale.

After several months of negotiations, Patterson made a series of escalating offers to CitiMortgage.  He first offered to buy the house for $371,000, which would have provided a net payout to CitiMortgage of about $350,000.  CitiMortgage rejected the offer.  Shortly after that, Patterson offered to buy the house for $412,000, which would have provided a net payout to CitiMortgage of about $391,940.  CitiMortgage rejected that offer.  Patterson then made a third offer to buy the house for $444,000, which would have provided a net payout of $412,620 to CitiMortgage.  What happened next is the source of the parties' dispute.

CitiMortgage internally decided to accept Patterson's third offer on the condition that he reduce certain fees associated with the sale, which would have

3

increased its net payout to $423,940.  CitiMortgage intended to convey that counteroffer in a letter dated September 19, 2008 that it sent to Patterson.  Because of a clerical error, however, the letter actually said that CitiMortgage wanted a net payout amount of $113,968.45.  In relevant part, the letter stated:

> This letter serves as CitiFinancial Mortgage Company Inc.'s (CFMC) authorization and acceptance of a short payoff on the above referenced account, in the MINIMUM amount of $113968.45, or the net proceeds from closing settlement, whichever is GREATER.

The letter also set a closing deadline for October 24, 2008.  CitiMortgage faxed the letter to Patterson with a "re line" that read, "Toby Breedlove Shortsale approval."

After receiving that letter, Patterson told CitiMortgage that he wanted to go forward with the short sale, but the parties never again discussed the payoff amount.  Patterson scheduled a closing, revised the sale agreement to reflect a sale price that would produce a net payout amount to CitiMortgage of $113,968.45, and obtained a $130,000 loan from a private lender to finance the purchase.

A lot happened on October 23, 2008, the date of the closing.  The closing attorney disbursed payout funds of $113,968.45 to CitiMortgage by wire transfer.  Only then did CitiMortgage realize its mistake.  A CitiMortgage attorney immediately attempted to contact the closing attorney to let him know that it would be rejecting and returning to his office the $113,968.45 in funds.  Because the closing attorney was not available, the CitiMortgage attorney left a message with that attorney's assistant stating that CitiMortgage had rejected the funds and would

4

be returning them because the net payout amount was based on a clerical error in the September 19 letter. CitiMortgage followed up by faxing a letter to Patterson stating that the "corrected" net payout amount was $423,940. All of that occurred on closing day. The next day CitiMortgage received a letter from Patterson demanding that it accept the $113,968.45 payment because, he insisted, that was the amount CitiMortgage had agreed to accept for the house.

For reasons that remain unclear, CitiMortgage took no action for more than two years. Then, in December 2010, CitiMortgage began foreclosure proceedings on the Breedlove property. Patterson and Breedlove responded by filing a complaint in state court against CitiMortgage and Mortgage Systems. They asserted claims for wrongful foreclosure, breach of contract, and tortious interference with contractual relationship, and sought damages and other equitable relief. CitiMortgage and Mortgage Systems removed the case to federal district court based on diversity and later filed a motion for summary judgment. The district court ultimately granted summary judgment in favor of both of them on all of the claims.

## II.

The dispositive issue is whether CitiMortgage's unilateral mistake, the clerical error in its September 19, 2008 letter about the amount of the net payout it was seeking, prevented the parties from forming a valid contract. We review de

5

novo the district court's grant of summary judgment, "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." Ellis v. England, 432 F.3d 1321, 1325 (11th Cir. 2005).

As a threshold matter, Patterson and Breedlove contend that we may not consider the clerical error, or the circumstances leading up to the September 19 letter, because the proof of it is dependent on inadmissible parol evidence. Under Georgia law, however, parol evidence is admissible "to show no valid agreement ever went into existence." BellSouth Advert. & Publ'g Corp. v. McCollum, 433 S.E.2d 437, 444 (Ga. Ct. App. 1993) (quotation marks and citation omitted); see also Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n, 297 S.E.2d 733, 737 (Ga. 1982). It is also admissible "to prove that a written term in a contract was a mistake." Nguyen v. Talisman Roswell, LLC, 585 S.E.2d 911, 912 (Ga. Ct. App. 2003); see also Helton v. Jasper Banking Co., 715 S.E.2d 765, 767 (Ga. Ct. App. 2011). Those are exactly the purposes for which the parol evidence was used in this case.

Patterson and Breedlove next contend that even if parol evidence is admissible, CitiMortgage's clerical error did not prevent the formation of a valid contract. They argue that, under Georgia law, a court may not rescind a contract based on a unilateral mistake.

6

It is true that Georgia courts will often refuse to save contracting parties from their own unilateral mistakes that could have been avoided through the exercise of due diligence.  See Decision One Mortg. Co. v. Victor Warren Props., Inc., 696 S.E.2d 145, 147–48 (Ga. Ct. App. 2010); Frazier Assocs. Mfrs. Representatives, Inc. v. Dabbs & Stewart, 325 S.E.2d 914, 916 (Ga. Ct. App. 1985).  But it is equally true, if not more so, that Georgia courts will not permit a party to take unfair advantage of an offer that contains an obvious, unilateral mistake.  As the Georgia Supreme Court explained more than a century ago, "There is no disposition in the law to let one 'snap up' another, or take an advantage of mistakes."  Singer v. Grand Rapids Match Co., 43 S.E. 755, 757 (Ga. 1903).[1]  Georgia courts will rescind or refuse to enforce a contract when "one of the parties has, without gross fault or laches on his part, made a mistake," the mistake "was known, or ought to have been known, to the opposite party," and "the mistake can be relieved against without injustice."  Id.  Under those

---

[1] At oral argument, counsel for Patterson and Breedlove argued for the first time that the Georgia Supreme Court recently abrogated Singer in Buckner v. Buckner, 755 S.E.2d 722 (Ga. 2014).  We see nothing in Buckner that could be read to abrogate or qualify away Singer.  Unlike Singer, Buckner involved a party who sought to rescind a contract based on a mutual mistake, not a unilateral mistake.  Compare Buckner, 755 S.E.2d at 726, with Singer, 43 S.E. at 757.  The trial court in Buckner found as a matter of fact that "the evidence failed to show mutual mistake," and the Georgia Supreme Court affirmed that factfinding.  755 S.E.2d at 726.  The Singer case and this one, by contrast, are unilateral mistake cases.  Not only that, but Buckner did not cite or mention Singer.  We will not infer that the Georgia Supreme Court abrogated the Singer decision without even acknowledging its existence.  See Palmer v. State, 651 S.E.2d 86, 87 (Ga. 2007) (finding that the Georgia Court of Appeals erred in construing certain Georgia Supreme Court decisions "as having effectively abrogated [a state statute] sub silentio").

7

circumstances, a unilateral mistake "may be a ground for rescinding a contract, or for refusing to enforce its specific performance." Werner v. Rawson, 15 S.E. 813, 814 (Ga. 1892); see also Ga. Code § 23-2-31 ("Equity . . . may rescind and cancel [a written contract] upon the ground of mistake of fact material to the contract of one party only.").

If Patterson was unaware that CitiMortgage's September 19 offer was a mistake, then CitiMortgage should suffer the loss. Frazier Assocs., 325 S.E.2d at 916. "On the other hand if [CitiMortgage] inadvertently (though negligently) made an obvious mistake and this mistake was apparent on the face of the offer and was known to [Patterson], then relief should [be] granted to [CitiMortgage] . . . ." Id.

Given the parties' negotiations and Patterson's series of escalating offers, CitiMortgage's mistake was obvious and Patterson knew or should have known it was a mistake. See Singer, 43 S.E. at 757. Patterson made successive offers of $371,000 and $412,000, which would have generated net payouts to CitiMortgage in the amounts of $350,000 and $391,940, respectively. CitiMortgage rejected both of those offers without making a counteroffer. Then Patterson offered $444,000, which would have generated a net payout of $412,620. In response to that highest offer from Patterson, CitiMortgage sent the September 19 letter counteroffering for a net payout to it of $113,968.45. No rational person would

8

believe that was anything but a mistake because rational persons and mortgage companies do not counteroffer for less — in this case nearly $300,000 less — than the latest and highest and still outstanding offer.

Patterson and Breedlove will not suffer an injustice under Georgia law because they will only be deprived of what Georgia law does not allow them to have — in Patterson's case the opportunity to take advantage of another's obvious unilateral mistake; in Breedlove's case the opportunity to retain mortgaged property after he defaulted on the underlying loan.  The breach of contract claims fail.

The only remaining claim, which is asserted jointly by Patterson and Breedlove, is for wrongful foreclosure by CitiMortgage.[2]  To establish wrongful foreclosure under Georgia law, a plaintiff must establish "a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages."  DeGolyer v. Green Tree Servicing, LLC, 662 S.E.2d 141, 147 (Ga. Ct. App. 2008) (quotation marks

---

[2] Patterson and Breedlove acknowledge that the Georgia Supreme Court's decision in You v. JP Morgan Chase Bank, N.A., 743 S.E.2d 428 (Ga. 2013), forecloses their claim for wrongful foreclosure against Mortgage Systems, but they purport to "reserve their argument for why [You] is wrong."  We, of course, never second guess state supreme court decisions about state law.  See Fid. Union Tr. Co. v. Field, 311 U.S. 169, 177, 61 S. Ct. 176, 178 (1940) ("The highest state court is the final authority on state law . . . .").

Patterson and Breedlove also state in passing that the district court erred in granting summary judgment on their claim for tortious interference with contractual relations and their requests for other forms of relief.  However, by failing to flesh out any argument about those issues they have abandoned them.  See United States v. Woods, 684 F.3d 1045, 1064 n.23 (11th Cir. 2012).

omitted).  The only source of a duty by CitiMortgage not to foreclose that Patterson and Breedlove point to is its September 19 letter.  Because that letter did not lead to formation of a valid contract, CitiMortgage did not have any duty not to foreclose on the property.  Hence the wrongful foreclosure claim fails.

**AFFIRMED.**[3]

---

[3] During oral argument counsel for CitiMortgage agreed that CitiMortgage would not attempt to pursue post-judgment interest or penalties against Breedlove.  Under the peculiar circumstances of this case it would be inequitable for CitiMortgage to do that to Breedlove and the district court should ensure that it does not do so.  See Ga. Code § 23-1-3 ("Equity jurisdiction is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong or relieving for injuries done."); Ga. Code § 23-4-31 ("A superior court shall have full power to mold its decrees so as to meet the exigencies of each case and shall have full power to enforce its decrees when rendered."); Goode v. Mountain Lake Invs., LLC, 524 S.E.2d 229, 231–32 (Ga. 1999) (discussing trial courts' "broad discretion to fashion equitable remedies based upon the exigencies of each case"); see also Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1518 (11th Cir. 1994) (describing grounds for equitable relief under Georgia law).