**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-12527

————————————

MARK D. WEISSMAN,
WEATHERLY AVIATION COMPANY INC,
  a Delaware Corporation,

*Plaintiffs-Appellants,*

*versus*

MICHAEL CHEOKAS,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:17-cv-00220-WLS

————————————

Before NEWSOM, GRANT, and ABUDU, Circuit Judges.

ABUDU, Circuit Judge:

Mark Weissman and his company, Weatherly Aviation Company, Inc. (collectively "Weissman"), appeal multiple district court

rulings arising from their longstanding dispute with Michael Cheokas, including the court's determination that the parties' confidentiality provision did not bar consideration of mediation-related evidence, its order enforcing the parties' settlement, its imposition of sanctions, and its denial of leave to amend the complaint. After nearly two decades of litigation, the parties participated in a June 2023 mediation, during which they exchanged emails regarding the terms of a settlement. Days later, Weissman reversed course, asserting that no agreement had been reached, and he moved to enforce the mediation's confidentiality provision to exclude those emails from evidence and bar the district court from considering what occurred during mediation. The district court enforced the settlement, denied Weissman's motion regarding confidentiality, sanctioned his counsel for vexatious conduct, and denied him leave to amend the complaint for a third time. After careful review of the record, and with the benefit of oral argument, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In 2006, Plaintiff-Appellant Weatherly California,[1] an agricultural aircraft company, defaulted on a lease agreement. At the time, Remington Investments held a security interest in Weatherly

---

[1] The assets sold at a foreclosure sale originally belonged to a corporation named Weatherly California (which later dissolved and rebranded as Weatherly Aviation Company). Due to financial problems, Weatherly California granted a third party, Remington, a security interest in the assets. Subsequently, Remington sold its interest in the assets to Weissman. At the time of the foreclosure sale, Remington, not Weissman, held the security interest.

23-12527                Opinion of the Court                3

California's aircraft assets.  Following the default, Remington foreclosed on the assets.  Weissman subsequently purchased Remington's interest in those assets.  Weissman has alleged that Cheokas, who owned the building involved in the lease, participated in a scheme to orchestrate Weatherly California's default and thereby strip Weissman of his property rights.  Cheokas has denied any involvement in a conspiracy or fraudulent scheme.  The foreclosure has spawned multiple rounds of litigation.[2]

In December 2017, Weissman filed the present suit.  His original complaint asserted eleven claims: (1) Fraud; (2) Fraud as to ownership of converted assets of Weatherly Aircraft Company; (3) Conversion; (4) Theft and Misappropriation of Trade Secrets; (5) Civil Conspiracy; (6) Tortious Interference with Contractual Relations; (7) Civil RICO Claim—Federal; (8) Georgia RICO, pursuant to O.C.G.A. § 16-14-4(a); (9) Wrongful Foreclosure and Breach of Self-Storage Statute; (10) Computer Fraud; and (11) a request for attorneys' fees and litigation expenses pursuant to O.C.G.A. § 13-6-11.  The district court granted Cheokas' motion to dismiss in part, dismissing the complaint's claims regarding theft

---

[2] The first action, filed in 2010, was brought by third parties against Weissman to challenge his ownership of the aircraft assets.  *See NAFTAA v. Weissman*, Civil Action No. 1:10-CV-037 (WLS) (M.D. Ga.).  The district court ruled that Weissman was the true owner of the assets but did not address the fraud or conspiracy claims he later asserted against Cheokas.  *Id.*  A second action was filed in federal court against the purchaser at the foreclosure sale.  *See Weissman v. Williams*, Civil Action No. 1:15-CV-040 (WLS) (M.D. Ga.).  Although Cheokas was initially named as a defendant, he was later dismissed without prejudice.  *Id.*

and misappropriation of trade secrets, tortious interference with contractual relations, and Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"), for failure to state a claim, but denying it as to the remaining counts.

In October 2018, Weissman filed an amended complaint re-pleading the remaining nine claims. Cheokas filed a second motion to dismiss, and the district court granted the motion in part. Accordingly, Counts One, Two, Three, Five, Seven, Eight, and Eleven, proceeded past the motion to dismiss stage.

The parties had multiple discovery disputes, and the district court granted several extensions. By January 2022, both parties filed cross-motions for summary judgment. In March 2023, the district court granted in part and denied in part Cheokas' motion for summary judgment, entering judgment in his favor on Weissman's federal and Georgia RICO claims, but finding genuine issues of material fact regarding the fraud, civil conspiracy, and conversion claims. As a result, five state-law causes of action, including those for fraud, civil conspiracy, conversion, and attorney's fees, remained.

In May 2023, Weissman sought leave to amend his pleadings for the third time, first moving to amend the claims under Georgia law instead of California or Illinois law as to the remaining claims. One week later, Weissman sought to add a claim to his complaint for punitive damages. The district court denied both motions as untimely and prejudicial, given the proximity to trial.

23-12527                Opinion of the Court                5

On June 12, the parties attended a nine-hour mediation before mediator Mark Dehler. Before discussions began, they executed a Mediation Agreement providing that "all communications of the parties in the mediation shall be treated as strictly confidential," but also stating that "this Mediation Agreement and any written agreement made and executed by the parties as a result of the mediation may be used in any relevant proceeding."

At the close of the session, Weissman's counsel emailed Cheokas' counsel regarding a settlement: Weissman would dismiss all claims, Cheokas would pay Weissman $34,250 within ten business days, and the parties would exchange mutual releases. Cheokas' counsel responded with revisions: dismissal with prejudice, payment within fourteen business days, and exclusion of sanctions and fee requests from the releases. Minutes later, Weissman's counsel replied: "We agree to these changes." The next morning, Weissman's counsel informed the district court that, "as a result of the mediation, the parties anticipate the filing of a dismissal with prejudice of this case upon the occurrence of certain contingencies within fourteen . . . business days," and noting that, "the only remaining issues" concerned sanctions and fee awards against counsel.

The next day, Cheokas asked Weissman if he was available for a phone call. Weissman declared to Cheokas that there had not been a "meeting of the minds" as to Cheokas' "last and final settlement proposal." On June 15, Weissman advised the district court that dismissal would not be forthcoming. Cheokas emailed

Weissman, stating the parties had agreed to settle. Cheokas' position was that a settlement had been reached, clarifying that sanctions were sought only against counsel, not Weissman personally.

In response to the parties' conflicting reports, the district court ordered them "to jointly inform the Court in writing as to finality of any settlement reached" by the end of the day, on June 20. The parties submitted a joint status report, but they maintained differing views on whether a settlement agreement existed. The parties then filed dueling motions: Weissman moved to enforce the confidentiality provisions of the Mediation Agreement, and Cheokas moved to enforce the settlement and sought sanctions.

On June 30, the district court held an evidentiary hearing. Weissman's counsel argued that the Mediation Agreement barred consideration of the June 12 emails and mediator testimony, and that enforcement required a formally signed document. Cheokas' counsel countered that the June 12 email exchange itself was an enforceable contract under Georgia law.

The district court denied Weissman's motion to enforce the confidentiality provision and ruled that it could consider evidence concerning the existence of a settlement agreement. It then heard testimony from mediator Dehler, who stated that "the matter was resolved in [his] opinion," and that the June 12 emails memorialized the terms. Dehler also testified that he typically requires "some kind of documentation" of mediation agreements, because parties often lack time to execute a formal written agreement.

23-12527                Opinion of the Court                      7

Weissman's counsel neither cross-examined Dehler nor presented evidence.

In a subsequent written order, the district court: (1) denied Weissman's motion to enforce the confidentiality provision, and (2) granted Cheokas' motion to enforce the settlement, identifying its material terms as a dismissal with prejudice of the suit, Cheokas' payment of $34,250 within fourteen business days, mutual releases, and the reservation of the parties' rights to seek sanctions and fees. The court also sanctioned Weissman's counsel under 28 U.S.C. § 1927 for unreasonably multiplying proceedings. The court further denied Weissman's motion for leave to file a second amended complaint. Weissman timely appealed.[3]

---

[3] The court previously issued a jurisdictional question concerning whether the orders designated in the notice of appeal were final or otherwise immediately appealable. Although the district court did not formally dismiss the case, its order enforcing the parties' settlement agreement, denying leave to amend, and imposing sanctions resolved all remaining issues before the court and left nothing further to be done except execute the judgment. Applying our functional approach to finality, we therefore conclude that the order constituted a final judgment appealable under 28 U.S.C. § 1291. *See Martinez v. Carnival Corp.*, 744 F.3d 1240, 1243–44 (11th Cir. 2014); *United States v. Alabama*, 828 F.2d 1532, 1536, 1537 (11th Cir. 1987) ("In its specificity, detail, and comprehensiveness, the [district court] opinion resolves every issue before the court."), *superseded by statute on other grounds, as recognized by Lussier v. Dugger*, 904 F.2d 661, 664 (11th Cir. 1990). Weissman's timely notice of appeal encompassed prior rulings that merged into that judgment, including the sanctions order. *See Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 204 (1999); *see also Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03 (1988).

## II. STANDARDS OF REVIEW

We review *de novo* a district court's interpretation of a contract. *See Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019); *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1293 (11th Cir. 2019). We review a district court's decision to enforce a settlement agreement for abuse of discretion. *See Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1152 (11th Cir. 2019).

We also review the district court's imposition of sanctions under Section 1927 for abuse of discretion. *See Norelus v. Denny's Inc.*, 628 F.3d 1270, 1280 (11th Cir. 2010). A determination that a party acted in bad faith is a factual finding and is reviewed on appeal for clear error. *See J.C. Penney Corp. v. Oxford Mall, LLC*, 100 F.4th 1340, 1346 (11th Cir. 2024). Clear error exists only when, after reviewing the full record, the court is left with a definite and firm conviction that a mistake has been made. *See Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1310 (11th Cir. 2023); *OHI Asset (VA) Martinsville SNF, LLC v. Wagner (In re Wagner)*, 115 F.4th 1296, 1303 (11th Cir. 2024). We review *de novo* a claim that the district court's imposition of sanctions violated due process. *See Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006).

Finally, we review the denial of a request to amend a complaint for an abuse of discretion. *See Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1404 (11th Cir. 1994). A district court abuses its discretion when it relies on the wrong legal standard, applies the law unreasonably or incorrectly, uses improper procedures in reaching

its decision, or bases its ruling on clearly erroneous factual findings. *See Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270 (11th Cir. 2020); *United States v. Beaufils*, 160 F.4th 1147, 1163 (11th Cir. 2025). Under that standard, a district court is afforded a range of permissible choices, provided its decision does not amount to a clear error. *See Rasbury v. IRS (In re Rasbury)*, 24 F.3d 159, 168 (11th Cir. 1994) (citing *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989)).

## III. DISCUSSION

Weissman raises four issues on appeal. First, he contends the district court erred in admitting and relying on the June 12 email exchange and mediator testimony, which he claims were protected by the Mediation Agreement's confidentiality provisions. Second, he argues that the emails and the mediator's testimony do not establish an enforceable settlement agreement. Third, he challenges the imposition of sanctions on his counsel under 28 U.S.C. § 1927. Finally, he argues the district court abused its discretion in denying leave to amend. We address each argument in turn.

### A. *Confidentiality of Mediation Evidence*

The Mediation Agreement provides that "all communications of the parties in the mediation shall be treated as strictly confidential," but expressly excepts "this Mediation Agreement and any written agreement made and executed by the parties as a result of the mediation." Weissman argues the district court erred by considering the June 12, 2023, email exchange and the mediator's testimony because those materials were confidential under the

Mediation Agreement.  The agreement's language, however, does not support his position.

Georgia law requires courts to give effect to the plain meaning of contractual language. *Tims*, 935 F.3d at 1237 (applying Georgia law) ("If the language [of a contract] is clear, the court applies its plain meaning . . . ."); *Atlanta Dev. Auth. v. Clark Atlanta Univ., Inc.*, 784 S.E.2d 353, 357 (Ga. 2016) (courts must first determine whether the contractual language is "clear and unambiguous").  If unambiguous, that meaning controls; ambiguity is resolved through contract-construction principles. *Id.*

The agreement is unambiguous.  It distinguishes between "communications . . . in this mediation" and "any written agreement made and executed . . . as a result of the mediation."  The former are confidential; the latter are expressly admissible.  The June 12 emails fall squarely into the latter category.  Weissman's counsel emailed proposed settlement terms: dismissal of all claims, payment of $34,250 within ten business days, and mutual releases.  Those terms directly tracked the points the parties had negotiated earlier that day during mediation.  Defense counsel counter-offered with revisions specifying dismissal with prejudice, extending the payment deadline to fourteen business days, and excluding sanctions and fee petitions from the releases.  Eight minutes later, Weissman's counsel responded: "We agree to these changes."  That written assent completed the agreement.

The exchange was not a separate negotiation, but the written memorialization of the mediated settlement.  Sent within

23-12527                Opinion of the Court                11

hours of the session, the emails documented the terms reached during mediation and reduced them to final form. That is sufficient evidence of a settlement. *See Brumbelow v. N. Propane Gas Co.*, 308 S.E.2d 544, 547 (Ga. 1983) ("[L]etters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice."); *Johnson v. DeKalb Cnty.*, 726 S.E.2d 102, 106 (Ga. Ct. App. 2012) (relying on emails between the parties' lawyers as memorializing the essential terms of the settlement agreement); *Cumberland Contractors, Inc. v. State Bank & Tr. Co.*, 755 S.E.2d 511, 518–19 (Ga. Ct. App. 2014) (enforcing an unsigned settlement agreement where the essential terms had been agreed to via email).

Georgia law likewise supports treating the exchange as an agreement made and executed as a result of the mediation. In *State v. Federal Defender Program, Inc.*, the Georgia Supreme Court held that emails containing definite terms and bearing counsel's names can satisfy the statute of frauds. 882 S.E.2d 257, 272–75 (Ga. 2022). Similarly, a settlement may be binding without a signed formal document when counsel with authority exchange written assent to its terms. *See Miller v. Miller*, 846 S.E.2d 429, 434 (Ga. Ct. App. 2020). That is what occurred here: counsel for both parties, acting with authority, confirmed by email the material terms discussed in mediation.[4] As the emails resulted from, and consummated, the

---

[4] Georgia courts will rescind or decline to enforce a contract when a party, without gross fault on their part, makes a mistake, the mistake was known or should have been known by the other party, and rescission can occur without causing injustice. *See Patterson v. CitiMortgage, Inc.*, 820 F.3d 1273, 1276–77 (11th Cir. 2016). Under these circumstances, a unilateral mistake may provide

mediation process, the district court correctly determined that they fell within the Mediation Agreement's admissibility exception.

The district court also properly considered Dehler's testimony because it falls within the disclosures authorized by the Georgia Uniform Mediation Act. O.C.G.A. § 9-17-6(b)(1) allows a mediator to disclose whether a mediation occurred or has terminated, whether a settlement was reached, and attendance. Dehler's testimony that the mediation concluded with an agreement and that the June 12 emails memorialized that agreement concerns precisely these categories: it confirms the fact of mediation termination and the existence of a settlement. It did not reveal any confidential bargaining positions. Instead, it addressed only whether an agreement was reached and completed. As the confidentiality clause applies only to "communications . . . in the mediation," not to testimony about whether an agreement was reached, the district court properly considered this evidence and correctly denied Weissman's motion to enforce the confidentiality provision.

## B. *Enforceability of the Settlement*

Weissman next argues that no enforceable settlement agreement was reached because there was no meeting of the minds. We disagree.

---

grounds for rescinding a contract or for refusing to enforce specific performance. *See Werner v. Rawson*, 15 S.E. 813, 814 (Ga. 1892); *see also* O.C.G.A. § 23–2–31 ("Equity . . . may rescind and cancel [a written contract] upon the ground of mistake of fact material to the contract of one party only.").

Under Georgia law, a contract is valid only if it includes competent parties, consideration, mutual agreement to the contract's terms, and a definite subject matter. *See Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016) (citing O.C.G.A. § 13-3-1). Assent requires a meeting of the minds on the essential terms of the contract itself. *Id.* Mutual assent is assessed objectively—whether a reasonable person would understand the parties' words or conduct as agreement. *See Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n*, 297 S.E.2d 733, 737 (Ga. 1982). Under this approach, mutual assent exists if a reasonable person in one party's position would understand the other party's words or conduct to reflect agreement, or if the other party knew the meaning the first party attached to those manifestations. *Id.* In making this determination, courts may consider the contract terms and surrounding communications. *See id.*; *see also Citizens & S. Nat'l Bank v. Williams*, 249 S.E.2d 289, 291–92 (Ga. Ct. App. 1978) (parol evidence may be offered to show that no valid contract was formed, such as where consideration was lacking).

The June 12 emails demonstrate mutual assent. Weissman's counsel first proposed terms: dismissal of all claims; payment of $34,250.00 within ten business days; and mutual releases. Defense counsel responded with a counteroffer: dismissal with prejudice, payment within fourteen business days, and exclusions for sanctions and fee petitions. Weissman's counsel agreed to the changes. That exchange reflects a textbook example of an offer, a counteroffer, and an unequivocal acceptance. *See, e.g.*, *Maddox v. Life & Cas. Ins. Co. of Tenn.*, 53 S.E.2d 235, 240 (Ga. Ct. App. 1949) (holding

that any acceptance on terms that do not conform with the original offer constitutes a counteroffer, which must itself be accepted to form a binding contract).

The mediator's testimony corroborates the same result. Dehler testified the mediation was resolved. Weissman's subsequent email to the court likewise acknowledged a forthcoming dismissal subject only to agreed contingencies. Taken together, the record establishes objective mutual assent.

Weissman's argument focuses on later disagreement regarding sanctions. However, assent is not destroyed based on a later need to clarify a provision of an agreement. *See Newman v. Newman*, 732 S.E.2d 77, 79 (Ga. 2012) (later-recognized ambiguity does not negate prior mutual assent to essential terms). Here, the sanctions carve-out was clarified in the counteroffer, and defense counsel reiterated after the mediation that sanctions were sought only against counsel, not Weissman personally. That disagreement does not negate the otherwise clear assent to the settlement agreement. Accordingly, the district court did not abuse its discretion in enforcing the settlement.[5]

---

[5] The district court analyzed the enforceability of the settlement under the summary-judgment standard that Georgia law uses for motions to enforce settlement agreements, reasoning that "a court's review of a motion to enforce a settlement agreement is similar to the analysis that a court undertakes in reviewing a motion for summary judgment . . . .[T]his Court must determine whether the movant . . . has shown that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case." DE 244 at 8-9 (citing *Ballard v. Williams*, 476 S.E.2d 783, 784 (Ga. Ct. App. 1996).

### C. Sanctions Under 28 U.S.C. § 1927

Weissman also challenges the district court's decision to sanction his counsel, arguing a lack of due process and that the sanction was unwarranted. We are unpersuaded.

Section 1927 permits sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" requiring payment of excess costs caused by such conduct. 28 U.S.C. § 1927. The statute targets bad faith or reckless conduct, not mere negligence. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–41 (11th Cir. 2007). Sanctions require (1) "unreasonable and vexatious" conduct, (2) that multiplies proceedings, and (3) a causal financial nexus to the excess proceedings, covering only costs reasonably incurred as a result of the attorney's

---

It stated, "just like a motion for summary judgment, the Court 'must draw all disputed factual inferences in the light most favorable to the non-moving part[y].'" *Id.* at 9 (citing *Cohen v. DeKalb Cnty. Sch. Dist.*, No. 1:09-CV-1153-WSD, 2009 WL 4261161, at *4 (N.D. Ga. Nov. 25, 2009)). Although it is not entirely clear that the district court's chosen procedural framework was the correct vehicle for resolving the issue, especially considering the fact that the court heard evidence at a hearing, that point is likely immaterial here and is not challenged by either party. The existence and enforceability of the settlement turn on undisputed written communications, and the appellant identifies no genuine disputes of material fact and focuses on whether the communications create a contract as a matter of law. As the formation and interpretation of a contract present questions of law when the underlying facts are undisputed, we proceed to resolve this issue on that basis without addressing the correctness of the district court's procedural mechanism.

misconduct.  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997); *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010).

### 1. Due Process

Before imposing sanctions, a court must provide the attorney adequate notice and a chance to be heard on the record.  *See In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995); *see also Amlong*, 500 F.3d at 1242 ("[A]n attorney threatened with sanctions under [Section] 1927 is entitled to a hearing.").  Notice must identify the conduct at issue and the potential for sanctions, and it may come from either the court or the opposing party.  *Mroz*, 65 F.3d at 1575.  Once the attorney receives notice, they must be provided an opportunity to respond, either in person before the court or in writing.  *Id*. at 1576. If both requirements are met, due process is satisfied.  *Id*.

Those requirements were met here.  Weissman's counsel received notice through Cheokas' motion to enforce the settlement, which expressly sought Section 1927 sanctions for post-mediation conduct contesting the agreement.  That motion identified both the conduct at issue and the basis for sanctions, satisfying *Mroz*.  65 F.3d at 1575.

Counsel also had a meaningful opportunity to be heard. The district court held a hearing on the motion, at which the sanctions issue was addressed.  The record reflects discussion of the settlement and related conduct during that hearing, just not by Weissman's counsel.  These facts confirm that Weissman's counsel received sufficient notice and a meaningful opportunity to be heard, satisfying due process.  *Amlong*, 500 F.3d at 1242.

### 2. Bad Faith

The first Section 1927 requirement—unreasonable and vexatious conduct—equates to a showing of bad faith, which exceeds mere negligence. *Amlong*, 500 F.3d at 1239–41. Bad faith is assessed objectively and exists where counsel knowingly or recklessly pursues meritless positions or needlessly obstructs litigation. *Id.* Discovery misconduct undertaken for improper purposes may also support such a finding. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir. 1993) (holding that a court may find bad faith and impose sanctions where a party's discovery misconduct necessitates repeated court orders, delays proceedings, increases litigation costs, and requires hearings or sanctions).

The record supports the district court's finding of bad faith. The court identified counsel's repeated refusal to provide evidence or substantive arguments in opposition to enforcing the settlement as conduct exceeding mere negligence. Although Weissman contends that counsel's arguments were grounded in the Mediation Agreement and its confidentiality provision, the court rejected those arguments as minimally supported and insufficient to justify continued litigation.

The court also distinguished between an initial legal position and continued pursuit of the same unsupported argument, explaining that counsel's initial refusal to acknowledge the settlement was not itself sanctionable. However, counsel's repeated filings advancing the same position after rejection went beyond reasonable advocacy and objectively impeded resolution. This conduct aligns

with precedent finding bad faith where attorneys pursue unsupported positions or needlessly prolong proceedings. *Amlong*, 500 F.3d at 1239–42; *Malautea*, 987 F.2d at 1545. The district court's conclusion that counsel acted in bad faith and warranted sanctions was well supported by the record.

### 3. Multiplying the Proceedings

Section 1927 also requires that counsel's conduct "multipl[ied] the proceedings" beyond what would have occurred otherwise. *Peterson*, 124 F.3d at 1396; *Peer*, 606 F.3d at 1314. This occurs when misconduct delays or extends litigation, requiring additional effort or expense that would not have been necessary. *Peer*, 606 F.3d at 1314; *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (multiplying proceedings occurs when conduct is "unreasonable and vexatious").

The district court properly found this requirement satisfied. Counsel's continued refusal to advance substantive arguments against enforcement of the settlement prolonged the litigation and necessitated additional proceedings, including a hearing on an agreement the record showed had already been reached. *Peer*, 606 F.3d at 1314; *Schwartz*, 341 F.3d at 1225. Under these circumstances, the district court's conclusion that Weissman multiplied proceedings was well supported.

### D. Denial of Leave to Amend

Finally, Weissman argues that the district court abused its discretion by denying his motion to file a second amended complaint. Under Rule 15(a), leave to amend should be "freely give[n]

when justice so requires." FED. R. CIV. P. 15(a); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (holding that a district court's discretion to deny leave to amend is limited, and such leave should generally be granted unless there is a substantial reason to refuse it).  However, denial is appropriate for undue delay, bad faith, repeated failure to cure deficiencies, futility, or undue prejudice to the opposing party.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  We have also held that "a party waives its opportunity to rely on non-forum law where it fails to timely provide—typically in its complaint or the first motion or response when choice-of-law matters—the sources of non-forum law on which it seeks to rely." *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018).

Weissman moved for leave to amend nearly six years into the litigation and just two weeks before trial, to (1) substitute California or Illinois law for Georgia law as to his remaining claims, and (2) add a claim for punitive damages.  The district court denied both motions as untimely and prejudicial.  That decision was not an abuse of discretion.  Weissman could have raised these issues much earlier in the proceedings.  In fact, the court had previously granted Weissman leave to amend on a similar point, and his counsel could have corrected these defects at that time.  Allowing amendment so late would have required reopening discovery and revisiting dispositive motions.  *Foman*, 371 U.S. at 182 (noting one

consideration in granting leave to amend is "undue delay").[6]  Accordingly, the district court did not abuse its discretion in denying amendment under these circumstances.

### IV. CONCLUSION

For these reasons, we affirm the district court's enforcement of the settlement, denial of the motion to enforce the confidentiality provisions of the Mediation Agreement, its imposition of sanctions against Weissman's counsel, and its denial of Weissman's untimely request to amend his complaint.

**AFFIRMED.**

---

[6] As the district court explained, such changes on the eve of trial would have unfairly prejudiced Cheokas, who had prepared his defense based on Georgia law and the claims as previously pleaded.  *Foman*, 371 U.S. at 182.