[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 09-10882 & 09-10883

_____

D. C. Docket No. 06-60146-CV-EGT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 20, 2010
JOHN LEY
CLERK

CHRISTOPHER JAMES PEER,

Plaintiff-Appellee,

versus

DANIEL WARFIELD LEWIS,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 20, 2010)

Before PRYOR and FAY, Circuit Judges, and QUIST,[*] District Judge.

QUIST, District Judge:

_____

[*] Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

Daniel Lewis ("Lewis") appeals the district court's[1] order denying sanctions against the three attorneys who represented his political rival, James Peer ("Peer"). Although Lewis filed numerous motions for sanctions during the pendency of this case, he only appeals the disposition of two of these motions: (1) his July 9, 2007, motion for sanctions against Peer's original counsel, Richard L. Rosenbaum ("Rosenbaum"), pursuant to Rule 11, 28 U.S.C. § 1927, and the court's inherent power; and (2) his October 10, 2006, motion for sanctions against Barry G. Roderman ("Roderman")[2] and Scott M. Greenbaum ("Greenbaum")[3] pursuant to Rule 11.

On appeal, Lewis argues that Rosenbaum's conduct is sanctionable because he knowingly filed a baseless Fair Credit Reporting Act ("FCRA") claim in federal court. Similarly, Lewis contends Roderman and Greenbaum violated Rule 11 by representing Peer in his meritless federal suit. Rosenbaum claims that he had a reasonable basis to file suit because (1) there was "suspicious" access which

---

[1]The parties consented to all proceedings being conducted by a magistrate judge, pursuant to 28 U.S.C. § 636(c). For ease of reference, we refer to the magistrate judge as the "district court."

[2]It is not clear what role Roderman actually played in this case. Heather A. Zardus, an associate at Barry G. Roderman & Associates, P.A., signed and filed all the pleadings. Even Roderman's notice of appearance was signed and filed by Ms. Zardus. (Notice of Appearance, docket no. 25, at 2.) Therefore, any reference to Roderman shall be interpreted as referring to Ms. Zardus as well.

[3]Lewis also sought sanctions against each attorney's law firm.

showed on Peer's credit report, (2) Lewis filed his state court complaint with ¶ 19, which mentioned Peer's credit report, and (3) Lewis refused to disclose the source of his information in interviews with the *Miami Herald* and the *Sun-Sentinel Digest* newspapers. Roderman and Greenbaum did not respond to Lewis' appeal or appear at oral arguments. For the reasons stated below, this Court will affirm in part, reverse in part, and remand the case to the district court for further proceedings consistent with this Opinion.

## I. BACKGROUND

This case arises from yet another contentious Florida election. Initially, Jim Naugle, the incumbent mayor, and Lewis were the only candidates in the City of Fort Lauderdale's 2006 mayoral race, which, according to Lewis, increased Lewis' chance of success in the election. Peer entered the mayoral race on January 10, 2006. Lewis sought to have Peer disqualified because Lewis felt a three way race would benefit the incumbent mayor.[4]

### A.    Lewis' State Court Complaint

On January 17, 2006, Lewis filed a state court claim challenging Peer's Fort Lauderdale residency and seeking to have Peer disqualified as a candidate. In paragraph 19 ("¶ 19") of his state court complaint, Lewis stated, "What is more, an

---

[4]Naugle received 6,622 votes; Lewis received 3,173 votes; and Peer received 473 votes.

3

October 15, 2005, credit report by TransUnion, one of the three major credit bureaus, reported that Defendant's [Peer's] current address is '18 Charter Drive, Wilmington, North Carolina 28403.'"

On February 1, 2006, the state court held a hearing on Lewis' complaint and dismissed the complaint for ineffective service of process. At this time, Lewis was represented by Robert Malove, and Peer was represented by Rosenbaum. After the state court hearing, there was a "heated discussion" in the hallway of the courthouse, and Malove and his law clerk told Rosenbaum and Peer that ¶ 19 of Lewis' complaint was inaccurate because Peer's address was obtained from a Westlaw People Finder report, and not Peer's credit report.[5] Later that same day, Malove amended Lewis' state court complaint to delete ¶ 19's reference to any credit report and served the amended complaint on Peer. Sometime on February 1 or February 2, 2006, Peer met with Rosenbaum to discuss Lewis' amended state court complaint and determine whether to bring a claim under the Fair Credit Reporting Act. (Videotaped Dep. of Christopher Peer, docket no. 42, Ex. 1, at 34-39.) On February 2, 2006, Peer obtained a copy of his credit report and faxed this report to Rosenbaum. Peer's credit report showed that Lewis never accessed it. (Id. at 30.)

_____

[5]Apparently, the Westlaw People Finder report cited a TransUnion credit report as the source for Peer's North Carolina address.

**B.      Peer's FCRA Claim in Federal Court**

The next day, February 3, 2006, Peer, with Rosenbaum acting as his attorney, filed suit against Lewis in federal court for a violation of the Fair Credit Reporting Act. Rosenbaum prepared and filed Peer's complaint based on ¶ 19 of Lewis' state court complaint and "suspicious activity" on Peer's credit report. Lewis counterclaimed for abuse of process.

Between February 3 and June 19, 2006, Rosenbaum conducted very little discovery. On June 13, 2006, Lewis retained counsel to represent him in this federal suit. Six days later, Rosenbaum withdrew from his representation of Peer for medical reasons and a breakdown in the attorney-client relationship. Peer then retained Roderman and Greenbaum as substitute counsel in mid-July 2006, and Peer was deposed on July 25, 2006. Immediately prior to the start of Peer's deposition, Roderman gave Lewis' counsel a copy of Peer's February 2, 2006, credit report. In his deposition, Peer testified that he knew before he filed his federal complaint that Lewis had amended his state court complaint to delete ¶ 19's reference to a TransUnion credit report.

On August 18, 2006, Lewis moved for summary judgment on Peer's complaint, arguing that Peer's claim lacked any evidentiary support. Peer responded to this motion on September 12. That same day, Lewis' counsel

complied with Rule 11(c)(2)'s safe harbor provision by notifying Roderman and Greenbaum that Lewis would file a Rule 11 motion for sanctions unless they withdrew the response. On October 10, 2006, Lewis filed his motion for Rule 11 sanctions. Roderman sought leave to withdraw as counsel on October 11, 2006, and his motion was granted on October 31, 2006. Greenbaum did not withdraw, and after failing to respond to numerous court orders, was sanctioned for reasons other than pursuing a frivolous case.

On June 26, 2007, the district court struck Peer's complaint and answer to Lewis' abuse of process counterclaim as a sanction for Greenbaum's disregard for the court's orders. Thirteen days later, on July 9, 2007, Lewis moved for sanctions against Rosenbaum pursuant to Rule 11, 28 U.S.C. § 1927, and the court's inherent power.

On October 15, 2007, the district court commenced a four day jury trial on the issue of damages for Lewis' abuse of process counterclaim. The jury returned a special verdict against Peer in the amount of $133,500 in compensatory damages and $657,000 in punitive damages. (Jury Verdict, docket no. 221.) Peer moved to renew his motions for a directed verdict pertaining to compensatory and punitive damages, and legal fees. Peer also moved for a new trial or judgment as a matter of law.

On May 13, 2008, the district court denied Peer's motion for a new trial or judgment as a matter of law, and denied Peer's renewed motion for a directed verdict pertaining to legal fees. Additionally, the district court granted in part and denied in part Peer's motions for a directed verdict regarding compensatory and punitive damages. (Omnibus Order on Rule 50 and 59 Mots., docket no. 243.) The district court reduced the jury's award of compensatory damages to $12,500 and the award of punitive damages to $112,500. Lewis appealed the reduction, and this Court affirmed the district court's order. See Peer v. Lewis, No. 08-13465, 2009 U.S. App. LEXIS 2428 (11th Cir. Feb. 10, 2009).

While the appeal was pending, the district court addressed the collateral matters of Lewis' October 10, 2006, and July 9, 2007, motions for sanctions against Rosenbaum, Roderman, and Greenbaum. The district court denied Lewis' motions for sanctions on January 14, 2009, holding that (1) Rosenbaum had a good faith basis to file the complaint, and (2) Rosenbaum did not act in bad faith. The district court did not address the merits of Lewis' Rule 11 motion against Greenbaum and Roderman. Lewis now appeals the district court's denial of these motions.

## II. STANDARD OF REVIEW

A court's decision to deny sanctions under Rule 11, 28 U.S.C. § 1927, and the court's inherent power is reviewed for an abuse of discretion. See, e.g.,

Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1179 (11th Cir. 2005); Baker v. Alderman, 158 F.3d 516, 521 (11th Cir. 1998). A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or bases the decision "upon findings of fact that are clearly erroneous." Cordoba, 419 F.3d at 1180 (citation omitted).

## III. DISCUSSION

### A. Rule 11

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." 2 James Wm. Moore et al., Moore's Federal Practice § 11.03 (3d ed. 2010) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S. Ct. 2447, 2454 (1990)). When an attorney files a pleading in federal court, the attorney signs the pleading to certify that, among other things, (1) the pleading is not being presented for an improper purpose; (2) the legal contentions are warranted by existing law or a nonfrivolous argument to change existing law; and (3) the factual contentions have evidentiary support or will likely have evidentiary support after discovery. Fed. R. Civ. P. 11(b).

In assessing the propriety of Rule 11 sanctions, this Court asks: "(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." Byrne

v. Nezhat, 261 F.3d 1075, 1105 (11th Cir. 2001) (citing Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998)). The advisory committee notes on the amendments to Rule 11 aid the Court in interpreting and applying this rule. For example, the advisory committee note of 1993 states that Rule 11 was amended to emphasize "the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." Fed. R. Civ. P. 11 advisory committee note of 1993. The commentary specifically notes that "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." Id. Finally, "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11 advisory committee note of 1983; see also Jones v. Int'l Riding Helmets, 49 F.3d 692, 695 (11th Cir. 1995) (stating that the "prohibition against using hindsight to determine whether a pleading had a reasonable basis when filed is intended to protect parties who file pleadings which appear well-grounded when filed, but which discovery or subsequent investigation reveals to be meritless.").

### 1. Rosenbaum's Conduct

At the time Rosenbaum filed Peer's complaint in federal court on February 3, 2006, Rosenbaum knew the following facts: (1) on February 1, 2006, Lewis'

counsel told Rosenbaum that ¶ 19 in the state court complaint was inaccurate because Peer's address was obtained from a Westlaw People Finder report, and not Peer's credit report; (2) on February 1, 2006, Lewis amended his state court complaint to delete ¶ 19's reference to any credit report and served Peer with this amended complaint; (3) on February 2, 2006, Peer obtained a copy of his credit report and faxed this report to Rosenbaum; (4) Peer's credit report showed that Lewis never accessed it; and (5) Peer, the client, testified that on February 1 or February 2, 2006, he met with Rosenbaum to discuss Lewis' amended state court complaint and whether to bring an FCRA claim in federal court. Peer's claim against Lewis was filed by Rosenbaum on February 3, 2006.

When an attorney signs and files a pleading, the attorney is certifying that every requirement in Rule 11(b) is satisfied; a violation of any one of these requirements is sufficient to support a motion for sanctions.[6] Fed. R. Civ. P. 11(b)-(c). Based upon a review of "the entire record and the parties' submissions related to the Rule 11 motion for sanctions," the district court found that

> at the time the complaint was filed counsel had some good faith basis to believe that the claim was not objectively frivolous. Although his claim was based on a misunderstanding of fact and had little chance of success from the outset, Plaintiff's counsel advanced a tenable or plausible legal position, based on his client's belief, that was not completely and utterly baseless.

---

[6]The Court does not intend to condone Ms. O'Loughlin's aggressive use of the motion for sanctions, particularly at the outset of this litigation.

(Omnibus Order on Pending Fee Mots., docket no. 259, at 5.)

This finding was clearly erroneous. The five facts cited above are all of the facts in the record relating to Rosenbaum's entry into this case. Rosenbaum knew Lewis amended his state court complaint to delete ¶ 19's reference to a TransUnion credit report before Rosenbaum filed Peer's suit in federal court. Moreover, neither the *Miami Herald* nor the *Sun-Sentinel Digest* newspaper article relied upon by Rosenbaum to justify his filing the FCRA claim (1) states that Lewis obtained Peer's credit report, (2) states that Lewis was concealing the identity of an individual who did obtain the report, or (3) was published before Peer filed his complaint in federal court. (Def.'s Notice of Filing Exs. in Supp. of Def.'s Mot. for Sanctions, docket no. 22, Exs. 8 & 9.) Finally, Rosenbaum's claim of "suspicious" activity on Peer's credit report was unsubstantiated speculation.

Peer's FCRA claim was thus objectively frivolous at the time of filing because there were no facts to support Peer's contention that Lewis accessed his credit report, nor was there any chance that discovery would uncover evidentiary support where Rosenbaum already possessed Peer's credit report. Furthermore, these same facts show not only that Rosenbaum should have been aware that Peer's claim was frivolous, but that Rosenbaum *was* aware that Peer's claim was frivolous.

11

Rule 11, however, does not permit the imposition of sanctions against Rosenbaum because Lewis' motion was untimely. Proceedings under Rule 11 can be initiated either by motion of a party or *sua sponte* by the court. Here, Lewis' July 9, 2007, Rule 11 motion asked the district court to impose sanctions against Rosenbaum on the court's own initiative. By definition, a court responding to a motion is not acting *sua sponte*. Therefore, the Court will analyze Lewis' motion as a motion for sanctions under Rule 11(c)(2).

The advisory committee note on the 1993 amendments to Rule 11 states that "[o]rdinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely. . . . Given the 'safe harbor' provisions . . . [in Rule 11(c)(2)], a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." Fed. R. Civ. P. 11 advisory committee note of 1993. The rationale for this rule is simple: "if the court disposes of the offending contention within the 21-day safe-harbor period after service, it becomes impossible under the provision of Rule 11(c)(2) to file the motion or otherwise present it to the court." 2 James Wm. Moore et al., Moore's Federal Practice § 11.22[1][c] (3d ed. 2010).

Here, although Lewis knew the claim was frivolous from the outset, Lewis finally had convincing proof that Rosenbaum knowingly filed a frivolous claim

when Peer produced his credit report at his deposition on July 25, 2006. At this point, Lewis had all the pertinent information and should have moved for sanctions. But Lewis did not do this. Instead, Lewis filed a timely Rule 11 motion for sanctions against Roderman and Greenbaum on October 10, 2006, and then waited nine months to file a motion for sanctions against Rosenbaum.

Lewis filed his motion for sanctions against Rosenbaum on July 9, 2007, thirteen days after the district court struck Peer's complaint as a sanction for Greenbaum's and Peer's misconduct. Lewis' motion for Rule 11 sanctions was thus untimely because the district court had already rejected the offensive pleading at the time Lewis moved for sanctions. Therefore, the Court must affirm the judgment of the district court regarding Rosenbaum's conduct under Rule 11. See 2A Fed. Proc., L. Ed. § 3:862 (citing Collier v. Stanbrough, 47 U.S. 14, 21, 6 How. 14 (1848) (stating that if the judgment of the lower court is proper "for the reasons given by the court below, or on other grounds manifestly appearing of record . . . it is our duty to affirm it.")).

### 2. Greenbaum's and Roderman's Conduct

In its opinion, the district court failed to address Lewis' Rule 11 motion for sanctions against Greenbaum and Roderman. Because the abuse of discretion standard is designed to provide deference to the decisions of a district court, the

13

Court will remand this issue to the district court for consideration in the first instance. See Macklin v. Singletary, 24 F.3d 1307, 1311 (11th Cir. 1994) (stating that "[b]ecause our scope of review is narrower and a district court's range of choice broader under the abuse of discretion standard, we should be more reluctant to address in the first instance issues to which that standard of review applies."); see also McKusick v. City of Melbourne, 96 F.3d 478, 489 n.7 (11th Cir. 1996) (same).

**B.      28 U.S.C. § 1927**

Lewis also appeals the district court's denial of sanctions[7] under 28 U.S.C. § 1927.[8]  Section 1927 is directed at the unreasonable and vexatious multiplication of proceedings.  "Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation."  Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001); see also LaSalle Nat'l Bank v. First Conn. Holding Group, LLC, 287 F.3d 279, 288 (3d Cir. 2002) (stating that sanctions under 28 U.S.C. § 1927 "are intended to deter an

---

[7]The district court's opinion addressed Lewis' motion for sanctions against Greenbaum and Roderman pursuant to 28 U.S.C. § 1927 and the court's inherent power even though Lewis' motion for sanctions did not raise these grounds. (Def.'s Mot. for Sanctions against Pl.'s Counsel Pursuant to Fed. R. Civ. P. 11 with Mem. of Law, docket no. 118.)

[8]Section 1927 provides that "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

14

attorney from *intentionally* and unnecessarily delaying judicial proceedings" (emphasis in original)).

"To justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable and vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003). An attorney multiplies the proceedings unreasonably and vexatiously "only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2007) (citation omitted). Bad faith is an objective standard that is satisfied when an attorney knowingly or recklessly pursues a frivolous claim. Id. at 1241.

As discussed above, Rosenbaum knew that Peer's claim was frivolous before the complaint was filed in federal court. Rosenbaum thus acted in bad faith. See Amlong, 500 F.3d at 1241. However, sanctions are not appropriate under section 1927 because Rosenbaum did not delay the judicial proceedings after he filed the complaint. Here, Rosenbaum filed a complaint, an answer to Lewis' counterclaim, and a two-page initial disclosure with Lewis' withdrawn state court complaint attached as an exhibit, all within a reasonable amount of time. Rosenbaum conducted very little, if any, discovery due to a medical condition.

15

Two months later, on June 19, 2006, Rosenbaum moved to withdraw from his representation of Peer. Therefore, sanctions are not appropriate under section 1927 because Rosenbaum did not engage in any dilatory tactics nor did he multiply any proceeding.

## C. The Court's Inherent Power

The inherent power "is both broader and narrower than other means of imposing sanctions." Chambers v. NASCO, Inc., 501 U.S. 32, 46, 111 S. Ct. 2123, 2134 (1991). While the other sanction mechanisms only reach certain individuals or conduct, "the inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." Id. Indeed, the inherent power of a court "'can be invoked even if procedural rules exist which sanction the same conduct,' for these rules are not substitutes for the inherent power." Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1575 (11th Cir. 1995) (citation omitted). Concomitantly, the inherent power's bad faith standard narrows the range of conduct that can satisfy this higher threshold for sanctions. See Chambers, 501 U.S. at 47, 111 S. Ct. at 2134.

Generally, if appropriate sanctions can be imposed under provisions such as Rule 11, courts should not exercise their inherent power. See Fed. R. Civ. P. 11 advisory committee note of 1993. "But if in the informed discretion of the court,

neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power" to sanction bad faith conduct in the course of litigation. Chambers, 501 U.S. at 50, 111 S. Ct. at 2136; see also Shepherd v. Am. Broadcasting Cos., 62 F.3d 1469, 1474 (D.C. Cir. 1995) (stating that "[w]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." (citing Chambers, 501 U.S. at 46, 111 S. Ct. at 2123)).

In this case, Rosenbaum knowingly filed a baseless claim and then withdrew from the case before opposing counsel had the opportunity to discover that Rosenbaum had Peer's credit report (showing no access) before Rosenbaum filed the FCRA claim. While the filing of a meritless claim is normally the purview of Rule 11, Rule 11 cannot be extended to Rosenbaum's conduct without vitiating the intent of Rule 11(c)(2)'s safe harbor provision.[9] The purpose of Rule 11(c)(2)'s safe harbor provision is to allow an attorney who violates Rule 11 to correct the alleged violation within twenty-one days without being subject to sanctions. Fed. R. Civ. P. 11 advisory committee note of 1993. This provision assumes that the attorney who filed the offensive pleading is still in the case. When the attorney who violated Rule 11 withdraws from the case prior to opposing counsel obtaining

_____

[9]Rule 11 would apply to this scenario had the district court acted *sua sponte* because the safe harbor provision does not apply when the court imposes sanctions on its own initiative. See Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003).

17

clear evidence of the violation, a party cannot move for sanctions under Rule 11 because the offending attorney no longer has the authority to correct or withdraw the challenged pleading. Therefore, Rule 11 does not allow parties to protect themselves from "hit and run" abuse of the judicial process.

Thus, as Lewis' only recourse for Rosenbaum's misconduct, the Court must determine whether the district court abused its discretion by denying Lewis' motion for sanctions under the court's inherent power.[10]

The district court held that sanctions were not appropriate under the court's inherent power for two reasons. First, the district court found that there was insufficient evidence in the record to show that Rosenbaum acted in bad faith. Second, the district court stated that its ability to function was adequately protected by (i) the striking of Peer's complaint due to Greenbaum's misconduct, (ii) Lewis' success on his counterclaim against Peer for abuse of process, and (iii) the district court's order granting Lewis' motion for fees and costs on his abuse of process counterclaim pursuant to 15 U.S.C. § 1681n. (Omnibus Order on Pending Fee Mots., docket no. 259, at 11.)

---

[10]Lewis' motion for sanctions under the court's inherent power is timely because Lewis filed his motion for sanctions before entry of the court's final order. See 2 James Wm. Moore et al., Moore's Federal Practice § 11.41[6] (3d ed. 2010) (citing Prosser v. Prosser, 186 F.3d 403, 405-06 (3d Cir. 1999) (stating that where sanctionable conduct occurs and is discovered before final judgment, a motion for sanctions pursuant to the court's inherent power must be filed before entry of the court's final order)).

"The key to unlocking a court's inherent power is a finding of bad faith." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (citation omitted). When considering sanctions under the court's inherent power, the threshold of bad faith conduct "is at least as high as the threshold of bad faith conduct for sanctions under § 1927." Amlong, 500 F.3d at 1252.

The district court's holding that there was insufficient evidence to show Rosenbaum knowingly acted in bad faith was clearly erroneous. The facts supporting our conclusion are set forth in the section discussing Rule 11 sanctions. Therefore, the Court finds that there is overwhelming evidence that Rosenbaum knowingly pursued a frivolous claim, and thus acted in bad faith.

Furthermore, the district court's statement that its ability to function was adequately protected by sanctions on others misses the point. The district court struck Peer's complaint and answer to Lewis' counterclaim as a discovery sanction for Greenbaum's failure to comply with the court's orders. Lewis' success on his abuse of process counterclaim redressed Peer's misconduct for pursuing a frivolous claim for "primarily political" purposes. But nothing in the record indicates the district court thoroughly analyzed Rosenbaum's conduct to determine whether that conduct merited the imposition of sanctions.

**D. Remedy**

19

The question then becomes, which court should determine whether and, perhaps, what sanctions should be imposed for what we consider to be Rosenbaum's bad faith conduct. In this regard, we recognize two things: this appellate court does have the authority to impose sanctions itself based upon the bad faith findings that we have explained; on the other hand, district courts have broad discretion to determine whether to impose sanctions and the nature or amount of those sanctions. Unlike an appellate court which reviews a cold, written record, a district court often has experience with a case which is developed over time and is based upon numerous interactions with the parties and attorneys.

In deference to the district court's discretion, we will remand this case to the district court to determine whether to impose sanctions on Rosenbaum and, if so, the extent of those sanctions. In making these decisions, however, the district court, contrary to its earlier findings, starts with our finding that Rosenbaum acted in bad faith when he knowingly filed a frivolous complaint. In addition, the district court should keep in mind that attorneys are the filter upon which courts rely to maintain the integrity of, and trust in, our judicial process. Most parties do not know what legal ethics apply or what facts give rise to a legitimate claim. Neither sanctions nor a judgment against the client absolve the lawyer.

## IV. CONCLUSION

The judgment of the district court is **REVERSED and REMANDED** as to Rosenbaum's conduct under the court's inherent power and **AFFIRMED** on other grounds regarding his conduct under Rule 11 and 28 U.S.C. § 1927. On remand, the district court shall determine whether to impose sanctions against Rosenbaum and, if so, the extent of such sanction. Additionally, the Court **VACATES and REMANDS** the portion of the district court's order regarding Lewis' Rule 11 motion for sanctions against Greenbaum and Roderman for the district court's consideration in the first instance.

This case is remanded for further proceedings consistent with this Opinion.