**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-12687

_____

CELSIUS HOLDINGS, INC.,

*Plaintiff,*

JOEL B. ROTHMAN,
CRAIG A. WIRTH,
SRIPLAW, PA,

*Interested Parties-Appellants,*

*versus*

A SHOC BEVERAGE, LLC,
KEURIG DR PEPPER INC.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-80740-DMM

_____

Before JORDAN, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Attorneys Joel Rothman, Craig Wirth, and their associated law firm SRIPLAW, P.A. (collectively, "Sriplaw") appeal the district court's order requiring them to pay $249,357.50 in sanctions and fees. Sriplaw represented Celsius Holdings, Inc. ("Celsius") in a lawsuit against A SHOC Beverage, LLC, and Keurig Dr. Pepper Inc. (collectively, "A SHOC"), alleging trade dress infringement, false advertising, and other federal and state law claims. After Celsius voluntarily dismissed the case, A SHOC moved for sanctions under 28 U.S.C. § 1927.[1] The district court granted A SHOC's motion and awarded sanctions specifically against Sriplaw for its conduct during the pleading and discovery phases of litigation.

On appeal, Sriplaw challenges the district court's order on the grounds that: (1) the firm was deprived of due process in defending itself; (2) the court never made any specific findings of misconduct on Sriplaw's part; and (3) Celsius' discovery responses and overall conduct did not rise to the level of sanctionable behavior.[2]

---

[1] A SHOC also sought sanctions under the court's inherent powers and the Lanham Act, 15 U.S.C. § 1117(a). Because the district court based its sanctions award only on Section 1927, we focus on the court's Section 1927 analysis in resolving this appeal.

[2] Sriplaw also challenges the district court's sanctions order under the First and Eighth Amendments. Sriplaw dedicated only three sentences to its First Amendment argument in its opening brief. A party who makes only "passing references" to a claim "or raises it in a perfunctory manner without supporting arguments and authority" abandons the claim. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Therefore, we find that Sriplaw abandoned its First Amendment claim and we will not consider it on appeal.

After careful review, and with the benefit of oral argument, we affirm the district court's finding of bad faith and its decision to sanction Sriplaw, but we vacate the sanctions and fees award and remand the case with instructions to recalculate the proper award amount in accordance with this opinion.

## I.    BACKGROUND[3]

In or around April 2021, Celsius, an energy drink company, retained Sriplaw to sue A SHOC, one of its competitors. The complaint focused on one of A SHOC's energy drinks, A SHOC Accelerator. Among other allegations, Celsius asserted that A SHOC had made false and misleading statements about the Accelerator beverage and lacked any "competent and reliable scientific evidence" to support its "labeling, advertising and promotional activities" related to its drink.

On May 28, 2021, A SHOC moved to dismiss the complaint on the grounds that its packaging features were common in the industry and its claims around the quality of its drink were based on scientific studies upon which Celsius itself previously had relied for

---

We have not yet addressed whether sanctions under Section 1927 implicate the Eighth Amendment. Even assuming the Eighth Amendment applies in this context, *see Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010) (noting that Section 1927 is "penal in nature"), we need not reach Sriplaw's excessive fine argument because, as explained further herein, we conclude that the district court erred in calculating the appropriate fee award.

[3] Because we write for the parties, we set out only what is necessary to explain our decision.

its own beverages. A SHOC also argued that Celsius failed to state a claim because the Federal Food, Drug, and Cosmetic Act ("FDCA") does not provide a private right of action. A SHOC's overall position was that Celsius' suit was an improper and unlawful attempt to squeeze it out of the market. While A SHOC's motion was pending, the parties proceeded with discovery.

In June and July 2021, A SHOC served Celsius with numerous discovery requests, including requests for production, requests for admission, and interrogatories. Celsius, by and through its counsel Sriplaw, originally objected to the requests based on their form, but the parties agreed to extend Celsius' time to file its responses. In early August 2021, Celsius responded to the discovery requests, but A SHOC argued the responses were insufficient, which prompted the parties to meet again on or around August 17 to reach a resolution.

On August 24, after unsuccessful negotiations, A SHOC filed two motions to compel: one for production of documents and another for answers to its interrogatories and requests for admission. At this point in the discovery process, Celsius still only had responded to 2 out of 87 requests for production, only 22 out of 184 requests for admissions, and had failed to respond to any of the 12 interrogatories. When Celsius finally did respond to the unanswered requests for production, the company submitted identical boilerplate objections asserting that the requests were "overly broad, vague, and ambiguous." As for the 162 unanswered requests for admissions, Celsius objected to all of those as well and

stated that the requests were "used as discovery devices" and "not relevant to any claim or defense." Again, Celsius submitted standard objections to most of the unanswered interrogatories, referring to the questions as "implicitly compound," "asking for a legal conclusion," and "facially oppressive and unduly burdensome."

In particular, Celsius objected to providing documents supporting: (1) its own "allegation at paragraph 42 of the Complaint that 'A SHOC . . . caused A SHOC ACCELERATOR to be placed in display case slots reserved for Celsius HEAT products'"; (2) its "allegation at paragraph 43 of the Complaint that A SHOC . . . caused cans of A SHOC products to be displayed at points of sale in the same color lineup as Celsius products"; and (3) its "allegation at paragraph 46 of the Complaint that 'A SHOC ACCELERATOR product . . . has already caused confusion, mistake and deception.'" Among the objected-to requests for admissions was a request for Celsius to "[a]dmit that, to the best of [its] knowledge, the image depicted . . . uses multiple shades of orange." Another request asked Celsius to admit that an image depicted "features the letter 'R' logo in uppercase font in the top portion of the can."

At the same time that Celsius was objecting to A SHOC's discovery requests, the parties also were disputing whether Celsius' expert witness disclosures complied with the federal rules. The court's scheduling order required Celsius to provide A SHOC with expert reports or summaries by August 9, 2021. However, Sriplaw sought an extension to September 7. When A SHOC's

counsel did not agree to the extension, Celsius eventually identified Ralph Blessing and Marketlab as consultants and included in the disclosure Blessing's resume, general background information on the services that Marketlab provided, and a contract detailing the areas of market research that Blessing would conduct regarding consumer confusion related to branding and the energy drinks' health benefits. Celsius also listed Chris Lockwood, PhD, and included an expert report in which Lockwood concluded that A SHOC had misbranded its products and that "A SHOC products should be marketed and regulated as Dietary Supplements." A SHOC moved to exclude both experts on the grounds that: (1) there was no expert report accompanying Blessing's disclosure and the summary of the market research he was expected to complete was insufficient to satisfy Celsius' discovery obligations; and (2) Lockwood's submission was replete with legal conclusions and, therefore, not admissible as expert testimony.

For its part, A SHOC submitted the expert report of Andrew C. Bernstein, who was certified as a public accountant, as a valuation analyst, and in financial forensics. As of the date of his September 7, 2021, report, Bernstein stated that Celsius still had not provided documentation, and there was no other evidence, showing that Celsius had incurred any lost profits due to the allegations in its complaint.

Earlier in the discovery process, the district court scheduled a hearing on A SHOC's motions to compel but ordered the parties to confer prior to the hearing to try to settle the discovery disputes.

The court also cautioned that it would "consider sanctions or cost-shifting against any party or counsel who fails to comply with all discovery obligations, fails to comply with applicable rules and orders, or who takes a frivolous, dilatory or unreasonable discovery position." The parties met and conferred and on September 14, six days before the hearing on A SHOC's motions, Celsius voluntarily dismissed the complaint pursuant to Fed. R. Civ. P 41(a)(1)(A)(i). The district court subsequently denied the motions to compel as moot and closed the case.

### A.        A SHOC's Motion for Sanctions and Fees

About two months after Celsius voluntarily dismissed the action, A SHOC moved for sanctions and fees against Celsius and its attorneys. A SHOC argued that Celsius brought the suit in bad faith to stifle competition. A SHOC concentrated on Celsius' failure to produce evidence to support its claims, its failure to disclose any expert witness reports, and the "meet and confer" sessions which A SHOC deemed as "pointless" given its position that Celsius' suit was frivolous. A SHOC maintained that Celsius' voluntary dismissal of the case was further evidence that Celsius knew its case lacked legal merit and that it could face sanctions for proceeding with the litigation. A SHOC asked the court to convert the dismissal to one with prejudice and sought $249,357.50 in fees against "Plaintiff Celsius Holding Inc. . . . pursuant to 28 U.S.C. § 1927, the Court's inherent powers, and 15 U.S.C. § 1117(a)." A SHOC's fee calculation was based on the expenses it incurred after it moved to dismiss the case.

### B.        The District Court's Sanctions Order

The district court held a hearing on A SHOC's motion, during which Sriplaw attorney Joel Rothman appeared on behalf of Celsius. The district court questioned Rothman about how, "in good faith," Celsius could deny the truth of certain statements that the company itself had identified as reliable based on its own cited scientific studies on energy drinks. The court then queried Rothman about why Celsius had refused or failed to respond to interrogatories regarding the factual and legal bases of its complaint, and why it submitted a proposed survey as part of its expert disclosures as opposed to the survey itself. In response, Rothman maintained that the discovery requests were "oppressive" and that with more time to meet and confer, the parties would have narrowed the requests so that, as he said, "we would have been able to answer the request." As for the expert disclosures, Rothman continued to argue that the proposed survey, as opposed to actual survey results, would have been sufficient for A SHOC to depose their experts, so he denied any failure to produce on that front as well. According to Rothman, Celsius decided to voluntarily dismiss the case after A SHOC announced in early August 2021 that it planned to rebrand its product and change its design. These changes, in Celsius' opinion, would resolve the claims in its complaint. Therefore, the suit was no longer necessary. Rothman then expressed strong disagreement with any finding that Celsius or the firm engaged in any behavior that would justify Section 1927 sanctions.

Early in the hearing, the district court described Celsius' conduct during discovery as "troubling," and found the timing of the

dismissal suspicious. The court stated that the voluntary dismissal suggested that Celsius wanted to avoid sanctions for bringing a frivolous lawsuit, especially given its failure to respond in good faith to A SHOC's discovery requests. The court ultimately granted A SHOC's motion and converted the dismissal to one with prejudice. In particular, the court determined that Celsius failed to meaningfully participate in discovery by repeatedly missing filing deadlines, providing boilerplate discovery objections, and refusing to answer "the most straightforward discovery requests."

As to the fee award, the court repeatedly referred to the "Plaintiff," but also referenced Section 1927 as allowing sanctions against "any attorney who so 'multiplies court proceedings unreasonably and vexatiously.'" The court concluded that the weaknesses in Celsius' claims combined with its failure to engage in good faith discovery supported an award of sanctions. The court identified particular allegations which were undermined by Celsius' own representations in the market, and the fact that the company's FDCA claims were not legally cognizable. Thus, the district court concluded that, at the very least, "Plaintiff and its counsel" were on notice by the time A SHOC filed its motion to dismiss that its complaint lacked factual and legal support.

Additionally, the court found that "Plaintiff's" failure to meaningfully participate in discovery "unnecessarily and vexatiously multipl[ied] litigation" by causing A SHOC to file numerous discovery motions and incur increased attorneys' fees. Finally, the court determined that the amount in sanctions and fees that

A SHOC sought was reasonable given the "facts and circumstances of the case." The court awarded sanctions to cover the reasonable fees and costs A SHOC incurred after it filed the motion to dismiss. After the district court issued its sanctions order, Sriplaw withdrew as counsel for Celsius and filed the instant appeal.

## II.    STANDARDS OF REVIEW

We review the district court's imposition of sanctions under Section 1927 for abuse of discretion. *Norelus*, 628 F.3d at 1280. "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1270 (11th Cir. 2020) (internal citation and quotations omitted). "[A] finding of bad faith is a finding of fact," and therefore "we review it for clear error." *J.C. Penney Corp. v. Oxford Mall, LLC*, 100 F.4th 1340, 1346 (11th Cir. 2024). Clear error is evident only when "the entirety of the evidence leads the reviewing court to a definite and firm conviction that a mistake has been committed." *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1310 (11th Cir. 2023) (internal citation and quotations omitted). We review *de novo* "the argument that the sanctions imposed by the district court violated due process." *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006).

## III.    DISCUSSION

Sriplaw raises several arguments on appeal, which can be condensed into three principal points: (1) the court failed to

provide Sriplaw with notice that its conduct might be sanctionable and therefore Sriplaw had no opportunity to properly challenge the motion; (2) the court's order lacked sufficient findings of bad faith or that its attorneys multiplied the proceedings in any way; and (3) the amount the court awarded in sanctions was excessive because it did not correlate to any excess proceedings.

### A.        Due Process

Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Before imposing sanctions, a court must provide the attorney with "fair notice and an opportunity for a hearing on the record." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980); *see also Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007) ("[A]n attorney threatened with sanctions under § 1927 is entitled to a hearing."). The notice must inform the party that their actions could expose them to sanctions "and the reasons why." *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 (11th Cir. 1995). Notice can come from either the court or the party seeking sanctions. *Id.* Once the attorney receives notice, he or she "must be given an opportunity to respond," either in person before the court or in writing. *Id.* at 1576. If both notice and an opportunity to be heard are satisfied, then the party has received due process. *Id.*

There were at least three instances during the litigation when Sriplaw was put on direct notice that its attorneys, and not just Celsius as the client, might be sanctioned for their behavior during the litigation. First, the court explicitly told the parties in its scheduling order that it would "consider sanctions or cost-shifting against any party *or counsel* who fails to comply." (emphasis added). Next, A SHOC brought its motion, in part, under Section 1927 which specifically applies to attorneys and not their clients. Finally, A SHOC's motion identified specific actions by Sriplaw during the discovery process that it considered to have been done in bad faith and, thus, unnecessarily multiplied the proceedings. *See In re Mroz*, 65 F.3d at 1575 ("Notice can come from the party seeking sanctions."). During the hearing on A SHOC's motion, Rothman had an opportunity to explain, from the firm's perspective, why certain discovery responses were offered or withheld, and why Celsius decided to voluntarily dismiss the case. Moreover, during the hearing, Rothman expressed his understanding as to the potential scope of the Section 1927 sanction: "[M]y concern is obvious . . . the 1927 motion accuses me personally of vexatious conduct . . . . I don't think I was in this case." Therefore, the district court afforded Sriplaw sufficient notice and an opportunity to be heard and we reject its arguments to the contrary.

### B.        Section 1927 Sanctions

Sriplaw argues that the district court's order lacked any findings regarding counsel's specific conduct and, instead, focused on "Plaintiff's" behavior during discovery. The firm maintains that the district court's conclusions as to bad faith and multiplying the

proceedings pertained to Celsius and otherwise said "nothing about former counsel for Celsius being at fault." More broadly, Sriplaw contends that sanctions under Section 1927 cannot be based on the strength of the complaint itself, so the district court's concentration on the merits of their claims when awarding sanctions was improper. It further highlights that there was never any ruling on A SHOC's discovery motions and asserts that engaging in discovery disputes is not tantamount to unreasonably delaying the proceedings.

Three conditions must be met before a court may impose Section 1927 sanctions: first, the attorney "must engage in 'unreasonable and vexatious' conduct;" second, that conduct must "multipl[y] the proceedings;" and third "the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the 'costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (quoting 28 U.S.C. § 1927). The first requirement, that the attorney acted "unreasonably and vexatiously," is equal to a showing of bad faith, which is more than mere negligence. *Amlong,* 500 F.3d at 1239, 1241–42. Courts employ an objective standard when considering whether an attorney's conduct reaches the level of bad faith and find bad faith if an attorney "knowingly or recklessly pursues a frivolous claim" or "needlessly obstruct[s] the ligation of a non-frivolous claim." *Id.* at 1242 (emphasis omitted) (quoting *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003)).

Nevertheless, a finding of bad faith alone will not sustain Section 1927 sanctions. *See Peterson*, 124 F.3d at 1396 (concluding that a finding of bad faith would not justify Section 1927 sanctions when the attorney's conduct did not multiply the proceedings). Section 1927 punishes attorneys who engage in "dilatory tactics," which is captured by the second requirement that the attorney's bad faith conduct "multiplies" the proceedings. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). Multiplication of proceedings is present when the attorney's conduct "results in proceedings that would not have been conducted otherwise." *Peterson*, 124 F.3d at 1396. That is, the attorney's conduct must extend or delay the judicial process beyond the normal course of proceedings. *Peer*, 606 F.3d at 1314.

Even when the first and second requirements are met, a court may impose sanctions under Section 1927 only to the extent that the award covers the costs the moving party incurred as a result of the excess proceedings. *See Peterson*, 124 F.3d at 1396. This principle reflects the final requirement for imposing sanctions under Section 1927—often referred to as the "financial nexus" requirement—which ensures a direct causal link between the sanctionable conduct and the fees awarded. *Id.* Thus, an order awarding sanctions under Section 1927 is justified only if all three requirements are satisfied.

### 1. Bad faith

In many cases involving the imposition of sanctions, the moving party often seeks sanctions under both Rule 11 and Section

1927. *See, e.g.*, *Peer*, 606 F.3d at 1311–14; *Quintana v. Jenne*, 414 F.3d 1306, 1309 (11th Cir. 2005). As we previously have recognized, Rule 11 and Section 1927 "are different in scope, and are governed by quite different legal standards," primarily because Rule 11 focuses solely on frivolous pleadings while Section 1927 addresses unnecessarily-prolonged litigation. *Amlong*, 500 F.3d at 1241 n.1; *Peer*, 606 F.3d at 1314. Nevertheless, parties often invoke both provisions for sanctions because these provisions can punish the same type of conduct. *See, e.g.*, *Amlong*, 500 F.3d at 1241 (clarifying that "sanctions under § 1927 are measured against objective standards of conduct" and may be warranted where an attorney "knowingly or *recklessly* pursues a frivolous claim"); *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (explaining that Rule 11 "incorporates an objective standard" that requires "courts [to] determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified"); *Hudson v. Int'l Computer Negots., Inc.*, 499 F.3d 1252, 1264 (11th Cir. 2007) (considering whether an attorney filed frivolous claims in the context of Section 1927 sanctions).

Moreover, in those cases in which sanctions were sought under both the Rule and the statute, courts have applied their finding of bad faith in the Rule 11 context to support a similar finding with respect to Section 1927. *See Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (affirming sanctions award under both Rule 11 and Section 1927 for the same bad faith conduct). In this case, A SHOC did not move for sanctions pursuant to Rule 11, but the types of

factual findings that would support a Rule 11 bad faith determination are still helpful here.

When determining whether an attorney has engaged in bad faith, the Federal Rules of Civil Procedure serve as a baseline for determining what conduct constitutes good faith. In the discovery context, Federal Rule of Civil Procedure 26 imposes upon an attorney a duty to ensure that an objection to a discovery request is not "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii); *see Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir. 1993). In *Malautea*, we affirmed Section 1927 sanctions against an attorney who unreasonably objected to interrogatories and provided inadequate responses. 987 F.2d at 1539,1544–45. The attorney in *Malautea* refused to respond to discovery requests despite repeated requests from opposing counsel and orders from the court to produce documents. *Id.* at 1539. We found that the totality of counsel's conduct was "egregious" and a clear example of discovery misconduct that warranted sanctions. *Id.* at 1544.

Here, Sriplaw represented Celsius throughout the entire discovery process, conferred with its client before responding to A SHOC's discovery responses, and signed those responses with the weight of Fed. R. Civ. P. 26's expectations on counsel. Before moving for sanctions, A SHOC informed Sriplaw that it believed the objections to its discovery requests were made in bad faith, and that even the most basic requests should have been answered.

A SHOC also agreed to extend the discovery deadlines multiple times to provide Celsius with more opportunities to supplement its responses. Yet, after nearly three months, the discovery responses were never amended or supplemented, and the extensions and meet and confer sessions—one of which the district court ordered—did not yield any positive outcomes. Then, five months after filing the complaint and after not producing any substantive discovery to support its lawsuit, Celsius voluntarily dismissed the case. During all that time, A SHOC incurred attorneys' fees for a case that, as the district court surmised, seemed to lack any basic factual or legal support as demonstrated by Celsius' own failure or inability to advance the lawsuit.

A closer look at Celsius' discovery responses also is informative of what supported the district court's conclusion. The over 80 requests for production that Celsius objected to were requests for documents supporting the contentions made in its complaint, and even cited the relevant paragraphs of the complaint. Yet, Celsius argued that these requests were "overly broad, vague, and ambiguous." Of the 162 objected-to requests for admissions, some simply asked Celsius to admit the colors and lettering on an image of an energy drink. Celsius claimed these requests were "not relevant to any claim or defense" even though it alleged a claim for trade dress infringement. Further, it answered none of the 12 interrogatories, even one asking it to "describe in detail the factual basis" for consumer confusion alleged in its complaint. Based on these facts, the district court found that Celsius did not meaningfully participate in discovery and its conduct was unreasonable and

vexatious.  Although the district court did not cite to Celsius' expert witness disclosures in its sanctions order, those disclosures also highlight the deficiencies in Celsius' discovery responses.  Instead of producing a report evidencing the consumer confusion for the trade dress infringement claim that it raised, Celsius produced a contract for a study that was not yet completed.

Given that there is evidence in the record to support the district court's factual finding of bad faith on Sriplaw's part as counsel for Celsius, we are not definitively and firmly convinced that a mistake has been committed.  *Skanska USA*, 75 F.4th at 1310.  Thus, the district court did not clearly err in finding that Sriplaw's conduct during discovery constituted bad faith.

### 2.  Multiplying the Proceedings

Although the record supports the district court's finding of bad faith, the court erred in calculating the amount of sanctionable conduct.  The court reasoned that the motion to dismiss should have alerted Sriplaw to the flaws in Celsius' claims, thereby inferring that any proceedings following that point "multipli[ed]" the judicial process.  However, under Section 1927, "even 'unreasonable and vexatious' conduct—is not sanctionable unless it results in proceedings that would not have been conducted otherwise."  *See Peterson*, 124 F.3d at 1396.  A SHOC's motion to dismiss was not necessarily the trigger point for purposes of determining whether Sriplaw unnecessarily multiplied the proceedings.  Rather, multiplicity under Section 1927 requires that the attorney delay the normal course of the judicial process by failing to respond in a

22-12687                Opinion of the Court                19

reasonable time or creating unnecessary, excess proceedings. *See Peer*, 606 F.3d at 1314 (finding that an attorney's bad faith conduct of knowingly filing a frivolous claim did not multiply proceedings because the attorney conducted the proceedings "within a reasonable amount of time").

For purposes of determining whether Celsius needlessly multiplied the proceedings, we look to what actions during the litigation could have been avoided but for the attorney's bad faith conduct. In this case, the district court should have focused on Celsius' behavior during discovery, not on whether the complaint itself was frivolous.[4] The entire lawsuit lasted for about five months which, in the grand scheme of litigation between two high-profile consumer products companies, perhaps is not a long amount of time. However, Celsius' conduct during that relatively short

---

[4] Importantly, Rule 11 includes a safe harbor provision in which the party moving for sanctions must allow the opposing party 21 days to withdraw or correct the challenged filing, claim or defense before submitting the motion to the court for judicial action. Fed. R. Civ. P. 11(c)(2). Section 1927 has no such safe harbor provision, which is why some lower courts have reasoned that the statute should not be "used to 'sidestep' the safe harbor provisions of Rule 11." *New England Surfaces v. E.I. Dupont de Nemours & Co.*, 558 F. Supp. 2d 116, 124 n.12 (D. Maine 2008). *See also Dwelling Management, Inc. v. Mission 8, LLC*, No. 23-cv-02593-VEC-SN, 2023 WL 8307986, at *2 (S.D.N.Y. Dec. 1, 2023) ("If a party could evade Rule 11's safe harbor provision simply by seeking sanctions under other authority, the safe harbor provision would be rendered 'meaningless.'"). Although we have said that a frivolous complaint can satisfy the bad faith standard, we have explained that sanctions under Section 1927 are not appropriate unless such a complaint multiplies proceedings. *See Peer*, 606 F.3d at 1314.

period, specifically during discovery, extended the lawsuit longer than necessary in the district court's view. Like its finding of bad faith, we review its finding of multiplicity for clear error. *See Peterson*, 124 F.3d at 1396 (concluding the district court's "factfinding" regarding multiplicity to be "clearly erroneous").

The district court during the hearing and in its order awarding sanctions focused on both the merits of Celsius' complaint and its conduct during discovery. The court did emphasize the multiple requests for extensions to produce discovery, the failure to respond to the most basic facts concerning the basis for its claims, and the meet and confer sessions which yielded no results but cost A SHOC attorney time, only for Celsius to voluntarily dismiss its lawsuit. However, the court also characterized A SHOC's motion for sanctions as being based on Celsius' decision to bring "claims with no basis in law or fact." The record supports a finding, and the imposition of sanctions for, "dragg[ing] out discovery with frivolous objections"—which Celsius repeated over the course of the litigation and which caused A SHOC to engage in discovery behavior and incur fees it could have avoided, *see Peterson*, 124 F.3d at 1396. Nevertheless, the court's ruling does not sufficiently separate out which behavior—the filing of the complaint or the discovery conduct—that the award covers. Instead, it appears that the court conflated the possible Rule 11 bad faith filing of the complaint with the Section 1927 standard for multiplying the proceedings. For this reason, we vacate the district court's award and remand the case with instructions that the court recalculate it.

Therefore, we affirm in part the district court's finding of bad faith as not being clear error, but we vacate and remand for a recalculation of the amount of sanctions that related specifically to Celsius' sanctionable discovery conduct under Section 1927. The revised award should reflect costs in an amount that reflects only the bad faith conduct that multiplied district court proceedings, rather than all potential bad faith conduct beginning with the filing of the suit.

## IV.    CONCLUSION

Because A SHOC is due only the excess fees and expenses it incurred as a result of Sriplaw's bad faith conduct during discovery, we affirm in part, and vacate and remand in part, for the district court to recalculate the appropriate amount to award in sanctions.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**